## Rogers's Estate.　Jackson's Appeal.

[Marked to be reported.]

*Practice, orphans' court—Issue devisavit vel non—Issue to determine interest of contestant—Will.*

Where an answer is filed to a petition for an issue devisavit vel non, denying that the petitioner has any interest in the estate, it is proper practice to award an issue to determine the relationship or interest of the petitioner, before awarding an issue devisavit vel non. If both issues are directed, that which is to determine the contestant's right to be heard should be tried first.

*Appeal—Costs—Evidence.*

Where the court below has refused to grant an issue in limine to determine the contestant's right, the Supreme Court will not reverse the decree where the evidence is sufficient to justify, if not require, a jury to find in favor of the contestant's right to be heard; but in such a case the appeal will be dismissed without costs.

Argued March 8, 1893.　Appeal, No. 256, Jan. T., 1893, by John Jackson, from decree of O. C. Northampton Co., refusing to award an issue to determine the right of a contestant of a will to be heard.　Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and THOMPSON, JJ.

Petition for issue devisavit vel non.

The petition of John Tozer, sur appeal from decree of register admitting last will and testament of James Rogers, deceased, to probate, averred in substance:

1. That James Tozer, known as James Rogers, died Sept. 6, 1887, seized of real and personal estate; that on Sept. 12, 1887, a paper writing was probated as his last will and testament and letters of administration with the will annexed were granted to Richard Jackson, from which petitioner appealed; that at the time of execution James Rogers was not of sound and disposing mind, and was unduly influenced.

2. That decedent left no heirs but petitioner and his sister, living in Merthyr Tydvil, Wales, and they had no knowledge of probate aforesaid until October, 1891.

3. That there is a dispute whether said paper is the last will and testament; whether decedent was of sound and disposing mind, or was unduly influenced, and praying for an issue.

The answer filed averred, inter alia:

1. That respondent denied that James Rogers, the decedent, was identical with the person described as James Tozer; that petitioners were not heirs at law of decedent, and were not " persons interested " under the act of assembly to take appeal from probate, but mere volunteers, and demanding, as a prerequisite, an ascertainment of that fact in an issue.

2. Averring that James Rogers was of sound and disposing mind; was not unduly influenced and that no application had been made to the register to revoke probate and letters testamentary.

The opinion of the court below was as follows, by SCHUYLER, P. J.:

" This controversy comes before us on an appeal from the decision of the register admitting to probate as the last will and testament of the decedent a certain paper writing of which the following is a copy: 'Pen Argyl, August 14, 1887.   High James Rogers do give to John Jackson Sr. my property known as the Pen argyl Hotel and the land ajoining in Pen argyl Northampton Co. P. A.   (Signed) James Rogers.'   We are now asked to direct a precept for an issue to the common pleas to try two questions, first, whether at the time said paper was executed by the decedent he was of a sound and disposing

mind, and, second, whether said paper is the last will of the decedent.  As to the first question we think the evidence is not up to the required standard to entitle the appellant to an issue.  We so hold on the authority of Keating's Appeal, 2 Mona. 4, a case in many of its features wonderfully like the present.

" Whether or not the probated paper is the last will of the decedent is a more serious question.  On its face it certainly presents none of the characteristics of a will.  ' It is true that no formal words are necessary in order to make a valid will; the form of the instrument is immaterial if its substance is testamentary:' Patterson v. English, 71 Pa. 458.  But here the substance is not testamentary.  ' A gift or bequest after death is of the very essence of a will, and determines a writing, whatever its form, to be testamentary :' Ib.  Here we have no gift or bequest after death, but a present gift.  It is claimed by the appellee, however, that the surrounding circumstances show that the gift was not to take effect until after the death of the decedent.  We are by no means clear that the paper can be helped in this way, but, conceding that it may be, the inference from these surrounding circumstances, although the facts may be undisputed, must unquestionably be drawn by a jury.  In questions of negligence certain facts when established amount to negligence per se, that is, where the precise duty is determinate and the same under all circumstances, and in such cases the court must determine the question; but intent is always a question for the jury, except where it is to be gathered from the terms of an unambiguous writing.

" In Patterson v. English, supra, an issue was granted to try the question whether a paper, not testamentary on its face, was a last will and testament; so in Murry v. Murry, 6 Watts. 353.  We think it best to follow these precedents, although when the time comes it may be the duty of the court to direct the verdict, on the theory that the question whether the writing in controversy is the last will of the decedent must be decided on the contents of the writing alone.

" A point was made at the hearing that the appellant had not proved himself to be a party in interest.  There is nothing in this point.  The evidence shows that the decedent introduced the appellant to a number of different persons as his son.

There is no evidence that he is an illegitimate son, and in the absence of such evidence we will not presume it. The presumption is in favor of innocence, which carries with it the presumption of legitimacy. That this preliminary question is for the court is clearly indicated in Taylor v. Com., 103 Pa. 101, if authority is needed for so plain a proposition.

["And now, June 13, 1892, the court directs a precept for an issue to the court of common pleas to try the question whether the paper in controversy is or is not the last will and testament of James Rogers, the decedent, in which issue the appellees shall be the plaintiffs and the appellant the defendant."]

John Jackson, Sr., thereupon took this appeal.

*Errors assigned* were (1) in directing a precept for an issue to the common pleas to determine whether the paper in controversy was the last will and testament of James Rogers, upon petition of John Tozer, before awarding an issue upon demand of respondent to determine whether said John Tozer was a person interested and not a mere volunteer; (2) in refusing to award an issue preliminary upon the request of appellee to determine the question whether John Tozer, the petitioner, was an heir at law of said James Rogers and a person interested under the act of assembly; (3) in assuming jurisdiction and awarding an issue, before the register had been petitioned to revoke the probate of said alleged will and testament of James Rogers, and letters of administration c. t. a. to Richard Jackson; quoting the decree, etc.

*Henry W. Scott*, for appellant.—If John Tozer was not the legitimate son and heir at law of James Rogers he was but a mere intruder and volunteer, with no standing to appeal from the register's probate, as a "person interested" under the act: Taylor v. Com., 103 Pa. 96.

If the fact was in real dispute, it was the duty of the court to arrest proceedings in limine, until it was properly and judicially ascertained: Knight's Ap., 19 Pa. 494. No doubt, if relationship is undisputed or admitted, whether a petitioner is a "person interested" under the act, is a question of law for the court: Simmon's Est., 4 Clark, 204; Taylor v. Com., 103 Pa. 101.

*T. F. Emmens*, for appellee.—To entitle a party to an issue, there must be a dispute upon some matter of fact, material to the validity of the alleged will. A mere naked allegation without evidence or against evidence cannot create a dispute within the meaning of the law: Knight's Ap., 19 Pa. 494; Cozzen's Will, 61 Pa. 196.

The orphans' court having acquired jurisdiction of this controversy, the whole matter was before that tribunal de novo. Its proceedings are analogous to those of the old register's court in the preliminary stages of the inquiry. Where any question of kindred, or disputable and difficult matter comes into controversy before any register he shall, at the request of any person interested, appoint a register's court for the decision thereof," etc: 2 Rhone O. C. Pr. 437. Now the orphans' court decides, first, whether the contestant is a party interested. If it decides that he is not, then there is an end of the controversy so far as he is concerned. If it decides that he is, then the issue is framed, under the direction of the court.

OPINION BY MR. JUSTICE WILLIAMS, April 3, 1893:

The question raised in this case is one of practice. It appears from the petition and answer that James Rogers, a resident and property owner in Pen Argyl, Northampton county, committed suicide in his own house on the sixth day of September, 1887. At the time his body was discovered an envelope was found in the same room directed to John Jackson, Sr. Inclosed in this envelope was a paper in the handwriting of Rogers which was presented by Mr. Jackson to the register for probate as the will of the decedent. Letters of administration cum testamento annexo were issued to Richard Jackson, who proceeded to settle the estate and file his administration account. John Jackson claimed to be the owner of the property of which Rogers died seized, as the sole devisee named in the paper which had been probated. A little less than five years after the death of Rogers, one John Tozer came from his home in England to Northampton county and appealed from the decree of probate. He presented his petition in the orphans' court, in which he alleged that the true name of James Rogers was James Tozer; that he came from England some years before, leaving his family behind him; that the petitioner was a son and heir of James

Tozer, known in Pen Argyl as James Rogers; that the paper under which John Jackson claimed was not the will of his father, as its execution had been procured by undue and improper influence; and asked that an issue devisavit vel non be directed to determine the validity of the alleged will.   Jackson replied in an answer denying the facts set out in the petition, and putting them fairly in issue.   He then asked the court to direct an issue to determine the question so raised, viz.: the identity of James Rogers with James Tozer, and the relationship of the petitioner to the deceased.   The learned judge refused to direct this issue but at once directed the issue devisavit vel non.   This is the ground of the present appeal.   We have no doubt that the proper practice requires an issue to determine the relationship or interest of the proposed contestant, in the first instance, where the relationship or interest is denied, and where as in this case the prima facies are against the petitioner. If John Tozer was the legitimate son and heir of James Rogers he had a right to be heard on the validity of the paper that had been admitted to probate, and operated to disinherit him. If he was not, then he had no standing, and his petition for an issue should have been dismissed as an impertinent attempt to interfere in what was no concern of his.   It was proper therefore for Jackson to insist upon a determination of this question in limine.   Both issues might have been directed, but that which was to determine the contestant's right to be heard should have been tried first, and if the result was adverse to the contestant the other should have been dismissed.   This question was determined in Cullen's Estate, 12 W. N. 34, affirmed by this court in Taylor v. The Commonwealth, 13 W. N. 378.

There was evidence given on the trial of this issue in the court below that would have been proper upon the trial of the issue asked by Jackson.   It is before us.   After an examination of it we are persuaded that it sustains the allegations made in the petition and would justify if not require a jury to find in favor of the contestant's right to be heard as the son and heir at law of the decedent, known in Pen Argyl as James Rogers. It would tend therefore to protract litigation for no useful purpose, if we should reverse the learned judge for his refusal to award the issue asked for by the appellant.   We have often held that we would not reverse for an error which did no real

harm to the party complaining. We recognize however the rule contended for by the appellant as the correct one, and have no doubt that he was entitled to the preliminary issue he asked for. The reason why we do not reverse is that which we have already stated. It would be of no service to the appellant in view of the evidence before us, and would involve delay and expense to the parties to no real purpose.

The appeal is dismissed, but without costs.

See also the next case.