**ESTATE OF Romeo A. LUONGO, Jr., Deceased**

**Appeal of Michael R. Luongo, Appellant.**

Superior Court of Pennsylvania.

Submitted April 8, 2002.

Filed May 1, 2003.

Michael J. Dougherty, Philadelphia, for appellant.

William J.M. Thompson, Philadelphia, for Flechtner, appellee.

Richard T. Mulcahey, Philadelphia, for Arena and Johnson, participating parties.

Before: MUSMANNO, BOWES and KELLY, JJ.

KELLY, J.

¶ 1 This appeal is from a final order and decree of the Philadelphia County Court of Common Pleas, Orphans' Court Division, which dismissed the exceptions of Appellant, Michael R. Luongo, and affirmed the decree of the Register of Wills admitting to probate the 1995 will of Romeo A. Luongo, Jr. ("Decedent"). Appellant asks us to determine whether the Orphans' court erred in sustaining preliminary objections to his appeal/petition for citation *sur* appeal from the decree of the Register of Wills on the grounds of lack of standing; failure to conform to rules of court; and legal insufficiency, without leave to amend his petition. For the following reasons, we hold that Appellant has standing to contest Decedent's 1995 will, but only in part, and his petition does not violate the rules of court as alleged. Nevertheless, we hold that Appellant's petition was legally insufficient and properly dismissed. Accordingly, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows. Until 1999, Decedent was a practicing medical doctor. He maintained his medical practice on the first floor of 2054 Locust Street, Philadelphia, Pennsylvania, and had practiced medicine there with his father for many years. Decedent was also raised at this address. His parents occupied the upper floors as the family's personal residence. Ultimately, the second and third floors of the building were converted to rentals. Decedent reserved the fourth floor of the building to himself, and it contained his personal belongings until the time of his death.

¶ 3 Decedent and Appellant's mother were married in 1955. The marriage produced three children, Appellant and his two sisters. From the late 1960s, Decedent struggled with alcohol and drug addictions, which he eventually controlled and stopped in 1976. Decedent and his wife divorced in 1978. Following the divorce, Decedent was estranged from his former wife and his three children. He did not attend his daughters' weddings or his son's graduation. However, contact with his former family resumed in 1984. Thereafter, Decedent spent many holidays and special events with his former wife and his children. By all accounts, Decedent was a headstrong, truculent, and fiercely independent person.

¶ 4 On October 15, 1999, Decedent died while hospitalized at Temple University Hospital in Philadelphia, Pennsylvania. He left a will dated March 17, 1995. In addition to six specific bequests, the will provided for the residuary estate to pass to Decedent's long-time friend and companion, Jacqueline Flechtner ("Proponent"). The will also appoints Proponent as executrix of Decedent's estate. Decedent's specific monetary bequests are to his three children, his two grandchildren, and Proponent's son. All of the bequests appear on page one of the 1995 will.

¶ 5 Prior to the 1995 will, Decedent executed two other wills, one on September 27, 1987 ("1987 will"), and another on October 18, 1983 ("1983 will"). Decedent's 1995 will expressly revoked the previous wills. Under the prior wills, Decedent left his entire estate to Proponent.

¶ 6 On October 21, 1999, Proponent offered Decedent's 1995 will for probate in Philadelphia County. On November 5, 1999, Appellant filed a *caveat* to the probate of the 1995 will alleging, *inter alia,*

the application of New Jersey law, lack of testamentary capacity, forgery, undue influence, and the Slayers' Act pursuant to 20 Pa.C.S.A. §§ 8801–8815.[1] On October 3, 2000, a *caveat* hearing proceeded before the Register of Wills. Following the presentation of Appellant's evidence, Proponent did not produce any evidence. Instead, she moved for a compulsory nonsuit. On February 5, 2001, the Register of Wills entered a decree, which dismissed Appellant's *caveat*, admitted Decedent's 1995 will to probate, and granted letters testamentary to Proponent as executrix of the 1995 will. The decree did not expressly grant or otherwise mention Proponent's motion for nonsuit.

¶ 7 On March 8, 2001, Appellant filed an appeal in Orphans' court from the decree of the Register of Wills and a petition for citation *sur* appeal. In his petition, Appellant alleged the 1995 will was a product of Proponent's undue influence and forgery. He further averred that Proponent was directly implicated in Decedent's death and should be barred from taking under the will by virtue of the Slayer's Act.

¶ 8 Proponent filed preliminary objections on March 28, 2001. In her preliminary objections, Proponent challenged (1) Appellant's standing to contest the 1995 will in that he failed to show how he is aggrieved by its probate; (2) Appellant's failure to conform to rules of court in that he proceeded on appeal to the Orphans' court without first filing a motion to remove the compulsory nonsuit allegedly entered by the Register of Wills; and (3) Appellant's failure to file a legally sufficient petition.

¶ 9 On May 17, 2001, Appellant filed a separate petition for removal of Proponent as executrix of the will and representative of the estate. In this petition, Appellant claimed (1) Proponent was not a domiciliary of Pennsylvania and had posted no bond; (2) there was ill will between Proponent and the other beneficiaries of the will due to her alleged involvement in Decedent's death, which should also disqualify Proponent from receiving letters testamentary; and, (3) the estate was in danger of depletion due to Proponent's self-dealing.

¶ 10 On May 30, 2001, the Orphans' court sustained Proponent's preliminary objections by decree, and dismissed Appellant's appeal and petition. The court also dismissed Appellant's petition to remove Proponent as executrix of the estate.

¶ 11 On June 5, 2001, Appellant filed exceptions to both decrees. On June 27, 2001, the court ordered briefing on the exceptions, and scheduled oral argument for August 15, 2001. Oral argument proceeded as scheduled on August 15, 2001. On September 14, 2001, the Orphans' court entered a final decree and opinion, dismissing Appellant's exceptions to the May 30th decrees. The record was thereafter returned to the Register of Wills to proceed under the ordinary course, without prejudice to Appellant's right to raise the Slayer's Act as a bar to **distribution** in the event of appropriate proof. Appellant timely filed his notice of appeal with this Court on September 20, 2001.

¶ 12 On September 26, 2001, Appellant filed a petition with the Orphans' court for a stay of all proceedings pending appeal. On October 1, 2001, the Orphans' court dismissed Appellant's petition for stay without prejudice to file it again with proper notice to all appropriate parties. Appellant refiled his petition for stay on Octo-

---

1. Although we do not have a record from the proceedings before the Register of Wills as part of the certified record on appeal, the parties agree and the facts of record indicate that Appellant raised these claims before the Register of Wills.

ber 10, 2001. Following consideration of Appellant's petition for stay and the preliminary objections thereto, the Orphans' court sustained the preliminary objections and dismissed the petition for stay by order dated November 6, 2001. On November 11, 2001, Appellant filed an application for stay with this Court, which was denied by a *per curiam* order dated December 11, 2001.

¶ 13 On appeal, Appellant raises the following issues for our review:

DID THE TRIAL COURT ERR IN SUSTAINING PRELIMINARY OBJECTIONS AND DISMISSING APPELLANT'S PETITION CHALLENGING THE VALIDITY OF APPELLANT'S DECEASED FATHER'S WILLS, HOLDING THAT APPELLANT LACKS STANDING?

DID THE TRIAL COURT ERR IN SUSTAINING PRELIMINARY OBJECTIONS AND HOLDING THAT APPELLANT'S PETITION IS LEGALLY INSUFFICIENT AND FAILS TO CONFORM TO COURT RULES?

DID THE TRIAL COURT ERR IN SUSTAINING PRELIMINARY OBJECTIONS AND DISMISSING APPELLANT'S PETITION, WITHOUT GRANTING APPELLANT LEAVE TO AMEND HIS PLEADING?

(Appellant's Brief at 3).

¶ 14 On appeal from the Register of Wills' decree admitting a will to probate, the Orphans' court must consider the facts presented and "either dismiss the petition, grant an issue[2] in case of a substantial dispute, or set aside the probate." *Wagner's Estate*, 289 Pa. 361, 367, 137 A. 616, 618 (1927). With respect to this Court's standard and scope of appellate review in will contests, the Orphans' court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law. *In re Elias' Estate*, 429 Pa. 314, 239 A.2d 393 (1968). *See also In re Estate of Presutti*, 783 A.2d 803 (Pa.Super.2001). If the record supports the court's factual findings, we will defer to these findings and will not reverse absent an abuse of discretion. *In re Estate of Blumenthal*, 812 A.2d 1279, 1286 (Pa.Super.2002). We are not constrained, however, to give the same deference to the court's legal conclusions. *Id.*

¶ 15 Initially, Appellant presents us with a complicated argument to support his standing to contest Decedent's 1995 will and to appeal its probate. To appreciate Appellant's position, we have divided his argument into two parts.

¶ 16 Appellant first establishes he is a named beneficiary under the 1995 will. Appellant maintains that if the residuary provision of Decedent's 1995 will is declared invalid, the residuary bequest will pass by virtue of intestate succession. Appellant suggests that invalidation of the 1995 will's residuary clause will allow him take his specific bequest plus an intestate share of the residuary of the estate. To support his position in favor of partial invalidation of the 1995 will, Appellant directs our attention to the fourth provision of the 1995 will that allows any invalidated, impaired, or ineffective provision to be carved out of the will and the will construed as though the invalid provision had

---

**2.** The phrase "grant an issue" means generally that the court allows a particular claim to go forward to trial if there is sufficient evidence of a substantial dispute on that claim. We note, however, that the right to a jury trial on a substantial dispute of material fact is addressed under 20 Pa.C.S.A. § 777 (providing in relevant part that when contest arises concerning validity of testamentary writing, Orphans' court may at its discretion impanel jury to decide question of fact, but jury verdict shall be advisory only).

not been contained therein. Further, Appellant directs our attention to the first statement of Decedent's 1995 will that expressly revokes all of his prior wills and codicils. Appellant contends he has standing to challenge the residuary bequest in the 1995 will and argue for partial probate of the remaining provisions of that will. On this basis, Appellant concludes he is a party in interest who is aggrieved if Decedent's 1995 will is probated as written.

¶ 17 The second part of Appellant's argument is more complicated. The court's opinion *sur* objections to the decrees of May 30, 2001 reasoned that the existence of Decedent's two prior wills should bar Appellant from contesting the 1995 will, where Appellant was not a beneficiary under either of the prior wills. Specifically, the court wrote:

> [A] review of the issue of lack of standing reveals that the decedent had executed two prior wills, one on September 27, 1987, and one on October 18, 1983, copies of which were attached to the pleadings. While [Appellant] receives a $10,000 bequest under the present will,

he is not a named beneficiary at all in the two prior wills. Pursuant to Pennsylvania law, a party must have some pecuniary interest, which would be adversely affected by admitting the will to probate in order to have standing to contest said will. Unless and until the 1995 will, the 1987 will and the 1983 will were all to be found invalid, [Appellant] has no standing to object to the testator's dispositive scheme. The lack of standing is a fatal flaw to [A]ppellant's petition and, therefore, the court cannot permit an amendment [to Appellant's petition] since the flaw is incurable. *Wills, Alleged Incapacitated Person*, 20 Fid.Rep.2d 16 (O.C. Div. Adams County, 1998).[3]

(Trial Court Opinion, dated September 14, 2001, at 2–3). Proponent's argument against standing mirrors the court's reasoning. Proponent asserts that Decedent's long-term estate plan, as evidenced in all three wills, leaves Appellant a relatively small bequest (1995 will) or nothing at all (1987 will and 1983 will). By virtue of the 1995 will, Proponent submits Appel-

---

3. *Wills, Alleged Incapacitated Person* involved an adopted daughter's petition, *inter alia,* to set aside the will of her incapacitated father. The court stated:

> Movant argues that petitioner has no standing to contest Robert A. Wills' will because she is not a beneficiary under the will and would not recover anything even if the will were invalidated. This is so because Robert A. Wills executed wills in 1986 and in 1993 and petitioner is only contesting the validity of the 1993 will. Under Pennsylvania law, if the 1993 will is found to be invalid the 1986 will becomes effective. *See In re Estate of Sidlow*, 374 Pa.Super. 624[, 543 A.2d 1143, 1145] ([Pa.Super.] 1988) ([stating] that "absent a specific revocation, the doctrine of relative revocation revives an earlier will which has been impliedly revoked by a subsequent will which is later declared invalid").[1]
>
> [1] The Court notes that Robert A. Wills' 1993 will specifically revoked the 1986

will; however, when the later will is executed under undue influence or lack of capacity the language specifically revoking the prior will fails. *Burns v. Kabboul,* 407 Pa.Super. 289[, 595 A.2d 1153, 1167] ([Pa.Super.] 1991), [appeal denied, 529 Pa. 655,] 604 A.2d 247 (1992). Thus, if Robert A. Wills' 1993 will is deemed invalid due to lack of capacity or undue influence, the 1986 will is revived.

> Petitioner is not a beneficiary under the 1986 or the 1993 wills. Although generally, a party who may take under intestate law has standing to contest a will, this case is distinguishable because there is an earlier will that would take effect that is not being contested and in which petitioner is not a beneficiary. Thus, because petitioner has no interest in the estate of Robert A. Wills under either will, she has no standing to contest only the 1993 will.
> *Id.* at 17–18.

lant will actually receive more than he would have received under either of the prior wills, which effectively disinherit Appellant. Therefore, Proponent agrees with the Orphans' court that Appellant is not aggrieved by the 1995 will and lacks standing to contest it.

¶ 18 Appellant responds that the mere existence of Decedent's prior wills cannot not deprive him of standing to challenge probate of the 1995 will, where he is a beneficiary under the 1995 will and the prior wills have not yet been presented to and passed the scrutiny of the probate court.[4] Although Appellant concedes his intestate interest in the estate is remote and may ultimately depend upon a successful attack of the prior wills, he concludes this alone should not deprive him of standing to challenge probate of the 1995 will.

¶ 19 Appellant further states that if required by *Wills, supra,* his challenge to the 1995 will should be construed as against all earlier wills and suggests he will take a larger share of the estate as an intestate heir if **all** the wills are declared invalid. Appellant concludes the Orphans' court erred in holding Appellant lacked standing to object to Decedent's dispositive scheme because Appellant was not a named beneficiary under Decedent's prior wills. For the following reasons, we agree that Appellant has standing to contest probate of Decedent's 1995 will, but only to a limited extent.

■ ¶ 20 As a general rule, a party must have standing to contest probate of a decedent's will. *In re Estate of Sidlow, supra.* In will contests, the right to an

appeal is statutory as is the designation of the parties on whom the right is conferred, and is defined at Section 908 of the Decedents, Estates and Fiduciaries Code, which provides:

### § 908. Appeals

■ **(a) When allowed.**—Any **party in interest** who is aggrieved by a decree of the register, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom to the court within one year of the decree: Provided, That the executor designated in an instrument shall not by virtue of such designation be deemed a party in interest who may appeal from a decree refusing probate of it. The court, upon petition of a party in interest, may limit the time for appeal to three months. [Emphasis added]

* * *

20 Pa.C.S.A. § 908(a). In essence, a party has the requisite standing to contest a will when that party is **aggrieved** by a judgment, decree or order of the register, in the sense that some pecuniary **interest** of that party has been "injuriously affected." *In re Estate of Seasongood,* 320 Pa.Super. 565, 467 A.2d 857, 859 (1983) (citing *In re Atlee's Estate,* 406 Pa. 528, 178 A.2d 722 (1962)). "When a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction." *Grom v. Burgoon,* 448 Pa.Super. 616, 672 A.2d 823, 824 (1996) (citing *Hill v. Divecchio,* 425 Pa.Super. 355, 625 A.2d 642 (1993), *appeal denied,* 538 Pa. 613, 645 A.2d 1316 (1994)). "Standing then becomes a jurisdictional prerequisite to an action, [and]

---

**4.** In support of this proposition, Appellant cites *In re Heffner's Estate,* 43 Pa. D. & C.2d 365 (Orph.Ct. Div. Montgomery County, 1967) and *In re Holtz's Estate,* 30 Pa. D. & C.2d 396 (Orph.Ct. Div. Perry County, 1962). We note that these cases are not binding

precedent for our purposes. As discussed *infra,* the validity of both cases has recently been called into doubt by this Court in *In re Estate of Briskman,* 808 A.2d 928 (Pa.Super.2002).

can be raised at any time, by any party, or by the court *sua sponte.*" *Id.* at 824–25.

¶ 21 A contestant to the validity of a will does not have standing to do so unless he can prove he would be entitled to participate in the decedent's estate if the will before the court is ruled invalid. *In re Ash's Estate,* 351 Pa. 317, 41 A.2d 620 (1945). To be aggrieved by the probate of a will, the contestant's share of the estate must be smaller because of probate or larger if probate is denied. *Id.* Thus, it has been held that a **non-relative** beneficiary under an earlier will that the testator physically destroyed when he was fully competent to do so, leaves the legatee without any interest in the estate to challenge the testator's later will. *Id.* (citing *In re Curtis' Estate,* 253 Pa. 389, 98 A. 575 (1916)). The resulting implication is that, had the prior will remained in existence, the contestant would have been considered a party in interest who was aggrieved by probate of the later will, because the contestant was a beneficiary under the prior will, whose share in the estate was made smaller by probate of the later will. *Id.* at 319, 41 A.2d at 621. Thus, a legatee under a prior will, whose legacy is revoked[5] only by implication by virtue of the testator's act of executing a later will, has standing to challenge the validity of the later will, because the prior will is revived upon a ruling that the later will is invalid. *In re Estate of Sidlow, supra.* "This is consistent with the principle that, absent a specific revocation, the doctrine of relative revocation revives an earlier will which has been impliedly revoked by a subsequent will which is later declared invalid." *Id.* at 1145.

¶ 22 This Court has also held that contestants who would not take under the intestate statute, if the challenged will were declared invalid, have no pecuniary interest adversely affected by probate of the will, and therefore have no standing to contest it. *In re Estate of Seasongood, supra.* For example, non-heir contestants claiming the decedent had promised to make a will in their favor cannot prevent probate of the challenged will. *Id.* The alleged breach of contract may, however, affect the distribution of the estate, and the contestants may have standing to object to the distribution. *Id.*

¶ 23 Further, creditors of an heir are not proper parties to maintain an appeal from probate of a decedent's will; "that one of the heirs owes money to a stranger to the [decedent] does not make the stranger a party interested in the will [of the decedent]." *In re Shepard's Estate,* 170 Pa. 323, 327, 32 A. 1040, 1041 (1895). In such circumstances, the heir's creditors are said to have no tangible interest in the estate that would confer the right to contest the decedent's will. *Id.*

¶ 24 Additionally, a surviving spouse who would receive the same benefit in the estate regardless of which will is probated has no standing to set aside probate of one will in favor of another will. *Knecht's Estate,* 341 Pa. 292, 19 A.2d 111 (1941). However, a surviving spouse could contest a former will, where she received more under the terms of a later will than she would receive if she claimed her statutory share against the former will. *In re Boland's Estate,* 99 Pa.Super. 321 (1930).

¶ 25 With respect to a decedent's heirs, generally an heir-at-law has the right to be heard on the validity of a will, where there is no prior will, and the estate would pass by the laws of intestacy if the challenged will were declared invalid. *In re Rogers' Estate,* 154 Pa. 217, 26 A. 225 (1893). Under these circumstances, the

---

**5.** Revocation of a will is governed by 20 Pa. C.S.A. § 2505.

heir-at-law has standing to contest probate, even if the heir-at-law is not a beneficiary under the will at issue, because the heir takes by operation of statute if the will fails. *In re Estate of Sowers*, 383 Pa. 566, 119 A.2d 60 (1956).

¶ 26 Ascertaining the standing of heirs at law to contest a current will becomes more complex when there are prior wills in existence; consider, for example, the recent case of *Estate of Briskman, supra*. In *Estate of Briskman*, decedent's niece, an intestate heir, timely appealed from the probate of the decedent's 1993 will (current will), which had named a non-relative as executor and sole beneficiary of decedent's estate. Decedent's niece challenged the 1993 will, claiming the decedent lacked the necessary testamentary capacity to execute that will. Fraud, duress, constraint, and undue influence were raised as alternative grounds for the appeal. Decedent's niece then produced a prior will dated August 1, 1984. The 1984 will made several specific bequests to charity, including one to decedent's brother in the amount of $10,000. The 1984 will also directed that decedent's residuary estate be held in a charitable trust. Notably, in her 1984 will, decedent expressly stated why she did not make any provision in her will for any other members of her family, thereby expressing her intent to disinherit the rest of her family. Decedent's attorney was named as executor and trustee of the 1984 will. Decedent's niece and her husband were named as successor trustees, in the event the named trustee could not serve.

¶ 27 The question on appeal was whether an heir-at-law of decedent had standing to appeal the probate decree, when the heir-at-law was not a beneficiary under decedent's probated will, but was a named

successor trustee under a prior will. In resolving this issue, the Court called into question *Heffner's Estate, supra* and *Holtz's Estate, supra*, which suggest that an heir-at-law has standing to contest the probate of a will even though there is in existence a prior testamentary document executed by the decedent excluding the heir-at-law as a beneficiary. The Court rejected the reasoning in those cases to the extent they suggest that the bare possibility of an intestate interest is sufficient to support an appeal from a probate decree. To the contrary, the Court reasoned that mere status of a contestant as an heir-at-law does not confer standing to file appeal from probate of a will in which the heir-at-law is not a beneficiary, where there is a prior will in which the heir-at-law is also not a beneficiary. The Court held that niece's interest "either as a successor trustee under the 1984 will, or an intestate heir-at-law if both wills are deemed invalid, is too remote to confer upon her an interest in the probate of the 1993 will." *Id.* at 933.

¶ 28 In the instant case, our analysis of Pennsylvania law makes clear that a will contestant's standing to appeal from a decree of probate turns delicately on the specific facts and circumstances of the matter at hand. However, our research indicates that Pennsylvania appellate courts have yet to address the situation presented here; *i.e.*, whether an heir-at-law has standing to contest probate of the decedent's most recent will, where the heir-at-law **is** a beneficiary under the current will, but **is not** a beneficiary under the decedent's prior wills, which were executed eight and twelve years respectively before the current will. Here, Appellant is Decedent's son, an heir-at-law and a named beneficiary under the 1995 will.[6]

6. Appellant does not claim standing as a fiduciary, whose estate or trust is aggrieved. *See*

20 Pa.C.S.A. § 908.

Therefore, under prevailing law, it can be said that Appellant has a pecuniary interest in the estate and in the probate of the 1995 will.

¶ 29 Nevertheless, as Pennsylvania law demonstrates, a mere showing of a relationship to the decedent and/or beneficiary status under the probated will is insufficient to confer standing to appeal from probate of that will. *See* 20 Pa. C.S.A. § 908; *In re Estate of Atlee, supra; In re Ash's Estate, supra; Knecht's Estate, supra; Estate of Briskman, supra; In re Estate of Seasongood, supra.* Appellant must also show that his pecuniary interest in the estate is aggrieved by probate of the will at issue, a showing complicated by the existence of Decedent's prior wills. Thus our inquiry is not over, because we must still determine whether Appellant's pecuniary interest in the estate is aggrieved by the probate of the 1995 will.

¶ 30 In general, Pennsylvania law provides that all property not disposed of by will passes according to the jurisdiction's law of intestacy. *In re Jacobs' Estate,* 343 Pa. 387, 391, 22 A.2d 744, 746 (1941). Pennsylvania's intestacy law is found at Section 2101 of the Decedents, Estates and Fiduciaries Code, which states:

§ 2101. **Intestate estate**

(a) **General rule.**—All or any part of the estate of a decedent not effectively disposed of by will or otherwise passes to his heirs as prescribed in this chapter, except as modified by the decedent's will.

(b) **Modification by decedent's will.**— A decedent by will may **expressly** exclude or limit the right of an individual or class to succeed to property of the decedent passing by intestate succession. If that individual or a member of that class survives the decedent, the share of the decedent's intestate estate to which the individual or class would have succeeded passes as if that individual or each member of that class had disclaimed his intestate share.

20 Pa.C.S.A. § 2101. Furthermore, Section 2103 states, in relevant part:

§ 2103. **Shares of others than surviving spouse**

The share of the estate, if any, to which the surviving spouse is not entitled, and the entire estate if there is no surviving spouse, shall descend in the following order:

(1) **Issue.**—To the issue of the decedent.

* * *

20 Pa.C.S.A. § 2103. However, "Pennsylvania law favors testamentary disposition of a decedent's estate." *Burns, supra* at 1167. If possible, "a decedent's will is construed to avoid intestacy." *Id.* Thus, our legislature has provided the following considerations with respect to wills containing revocation clauses:

§ 2505. **Revocation of a will**

No will or codicil in writing, or any part thereof, can be revoked or altered otherwise than:

(1) Will or codicil. By some other will or codicil in writing;

(2) Other writing. By some other writing declaring the same, executed and proved in the manner required of wills; or

(3) Act to the document. By being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revocation, by the testator himself or by another person in his presence and by his express direction. If such act is done by any person other than the testator, the direction of the testator must be proved by the oaths or affirmations of two competent witnesses.

20 Pa.C.S.A. § 2505. Moreover, once a will has been revoked, the ability to revive the will has been limited by Section 2506, which provides:

### § 2506. Revival of revoked or invalid will

■ If, after the making of any will, the testator shall execute the later will which expressly or by necessary implication revokes the earlier will, the [testator's] revocation of the later will shall not revive the earlier will, unless the revocation is in writing and declares the intention of the testator to revive the earlier will, or unless, after such revocation, the earlier will should be reexecuted. Oral republication of itself shall be ineffective to revive a will.

20 Pa.C.S.A. § 2506. Specifically, this Court has stated:

Revocation may be effectuated by any later writing which evidences the decedent's intent to revoke, specifies what is to be revoked, and bears the decedent's signature at the end thereof, so long as it was executed with an intent to revoke. Words of revocation marked on a duplicate will may be sufficient to revoke an original, which the testator is unable to obtain. No specific words of revocation are required, but phrases such as "null and void" have been held to be sufficient. However, in order for the revocation to be effective the signature of the testator must be proved by two competent witnesses, although they need not be subscribing witnesses.

See *In re Estate of Sidlow, supra* at 1145–46. Our Supreme Court further explained that the effectiveness of a revocation clause in a decedent's will is dependent upon the validity of the writing containing the revocation. *Estate of Shelly,* 484 Pa. 322, 399 A.2d 98 (1979). Our Supreme Court wrote:

[W]here a testamentary disposition fails because of a defect in the instrument itself its revocation clause is inoperative.

[The authorities] all recognize a clear distinction between failure of the dispositive part of the revoking instrument because of a defect in the instrument, and failure because of extrinsic circumstances; and there is entire concurrence of view that in **the former case the revocation is inoperative, while in the latter it must prevail.** [Emphasis added]

*Melville's Estate,* 245 Pa. 318, 323, 91 A. 679, 681 (1914); *accord Braun's Estate,* 358 Pa. 271, 275, 56 A.2d 201, 203 (1948) ([holding] where codicil invalid due to defect intrinsic to instrument there was no revocation of former will).

*Id.* at 330, 399 A.2d at 102. In *In re Estate of Holt,* 405 Pa. 244, 174 A.2d 874 (1961) our Supreme Court observed:

It is clear...that (1) the doctrine [of dependent relative revocation] as applied by our Courts is primarily a rule of testamentary construction which is used as an aid in ascertaining the intent of the testator, and (2) the doctrine has been applied only where there is (a) either a defective execution of a subsequent will or codicil or (b) an intrinsic defect in the subsequent will or codicil. However, where the revoking instrument is in itself valid and operative but the subsequent disposition fails for some extrinsic reason such as the incapacity of the devisee to take, the revocation nevertheless remains effective.

*Id.* at 251, 174 A.2d at 877 (footnotes omitted). In essence, once a will is proved to be intrinsically invalid, it no longer has the effect of revoking prior wills because the entire instrument is inoperative, including the revocation provision. *Id.*

■ ¶ 31 In the instant case, Decedent's 1995 will contains an express revo-

cation of his prior wills. However, Appellant's challenges to the 1995 will (undue influence, forgery/fraud) raise intrinsic or inherent defects in the instrument, *see id.*, such that if the whole of Decedent's 1995 will fails due to Appellant's asserted claims, then the revocation clause contained therein is also inoperative. *See Estate of Shelly, supra.* As a result, Decedent's 1987 will is revived. *See id.* Appellant is not a beneficiary under Decedent's 1987 will, which leaves Decedent's entire estate to Proponent.

¶ 32 Moreover, the 1987 will contains an express revocation provision, which is likewise inoperative, if the 1987 will is declared wholly invalid by virtue of Appellant's asserted defects. Such an outcome would then revive Decedent's 1983 will, which also bequeaths Decedent's entire estate to Proponent. Appellant effectively conceded during oral argument before the Orphans' court that Decedent was not suffering undue influence when he executed the 1983 will. (N.T. Hearing, 8/15/01, at 16). Appellant's only contention with respect to the 1983 will was that it had been physically destroyed. The court confronted Appellant with the fact that the 1983 will was still extant, and pressed Appellant on the issue of standing in light of the existence of the 1983 will and his prior concession that undue influence did not taint the 1983 will. Appellant then made an effort to retract his concession and later declared non-responsively that the law of New Jersey applied. (*Id.* at 17, 36).

¶ 33 When reviewing Decedent's testamentary pattern under the prior wills of 1987 and 1983, the court was not passing on the validity of those wills. The court was simply trying to ascertain the realistic possibility of Appellant's success in challenging the prior wills, which would have to be invalidated before Appellant could reach more of Decedent's estate through

intestate succession. We conclude that this exercise was entirely legitimate, where done for the purpose of determining whether Appellant had a practical possibility of an aggrieved interest in the estate by virtue of the probate of Decedent's 1995 will. We are in agreement with the Orphans' court on this point, that Appellant has no standing to contest probate of the whole of Decedent's 1995 will, where there is still in existence Decedent's two prior wills, because Appellant received more under the 1995 will than he would have received under either the 1987 will or the 1983 will. The practical possibility that Appellant could reach more of Decedent's estate through a challenge to the whole of Decedent's 1995 will is virtually nil on the facts averred, due to the existence of the prior wills. Accordingly, we hold that Appellant has no standing to set aside the **whole** of Decedent's 1995 will, because Appellant cannot show how his pecuniary interest in Decedent's estate has been aggrieved by the probate of the 1995 will in its entirety. *See* 20 Pa.C.S.A. § 908; *In re Estate of Seasongood, supra.*

¶ 34 An intestacy is said to occur by operation of law. *In re Ervin's Estate,* 367 Pa. 58, 79 A.2d 264 (1951). Although an heir-at-law's inheritance under a will is expressly limited or even excluded, as a result of the decedent's failure to make an effectual disposition of a portion of his estate, the heir may take if an intestacy results. *Id.* "Intestacy may result not merely from the testator's failure to make a will at all, or from his failure to dispose in his will of all of his estate, but also from his failure to make a legal and effectual disposition of either his entire estate or a portion of it." *In re Ritter's Estate,* 81 Pa. D. & C. 498, 501 (Orph.Ct. Div. Philadelphia County, 1952).

¶ 35 Our Supreme Court has suggested there may be a case where the

alleged undue influence applies to a single independent provision in a will, leaving the rest of the will to stand. *See Appeal of Cuthbertson*, 97 Pa. 163 (1881) (holding ultimately that specific beneficiaries had right to contest whole of codicil, residue of which was made up or largely increased by reductions to specific bequests in prior will). *See, e.g., In re Clark's Estate*, 461 Pa. 52, 334 A.2d 628 (1975) (affirming decree that ordered residuary clause to be set aside on basis of undue influence). Whether the entire will or only portions of it are invalidated by the exercise of undue influence depends upon the extent of the taint. *In re Taylor's Estate*, 423 Pa. 276, 223 A.2d 708 (1966).

¶ 36 In the instant case, Appellant has alternatively argued for partial invalidation of the 1995 will, specifically the residuary clause, which will then allow him to take his specific bequest **plus** an intestate share of the residuary of the estate. He referenced the fourth provision of the 1995 will that allows any invalidated, impaired, or ineffective provision to be carved out of the will and the will construed as though the invalid provision had not been contained therein. If Appellant challenges only the residuary clause of the 1995 will, then the express revocation contained in the 1995 will is preserved, and the existence of Decedent's 1987 and 1983 dispositions will not impede his challenge. The realistic possibility that part of the estate may pass by intestacy, and Appellant's share in Decedent's estate will increase thereby, is not so remote as to deprive Appellant of right to contest the residuary clause of Decedent's 1995 will. Therefore, to the extent Appellant contests probate of the residuary bequest contained in the 1995 will, we hold Appellant has the requisite standing to do so, as a party in interest who will be aggrieved if the resid-

uary clause contained in the 1995 will is probated as written.

¶ 37 In his second issue, Appellant argues that the *caveat* proceeding before a hearing officer from the county Register of Wills does not constitute a trial and the Pennsylvania Rules of Civil Procedure, therefore, do not require him to file post trial motions following the *caveat* proceeding. Appellant insists an appeal from a decree of the Register of Wills is *de novo*. He further asserts that the decree of the Register of Wills did not grant Proponent's motion for a nonsuit. Appellant concludes Rules 227.1 and 230.1 are inapplicable in the present case and the trial court erred in sustaining Proponent's preliminary objection for Appellant's failure to conform to rules of court in that he proceeded on appeal to the Orphans' court without first filing a motion to remove the compulsory nonsuit allegedly entered by the Register of Wills. We agree.

¶ 38 The Pennsylvania's Rules of Civil Procedure state that the court, on oral motion by the defendant, may enter nonsuit on any or all causes of action if the plaintiff has failed to establish a right to relief at the close of plaintiff's case. Pa. R.C.P. 230.1. Furthermore, Rule 227.1(c) governs the manner in which a plaintiff may remove a compulsory nonsuit: "Post-trial motions shall be filed within ten days after (1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or (2) notice of nonsuit or the filing of the decision or adjudication in the case of a trial without a jury or equity trial." *See* Pa.R.C.P. 227.1. Moreover, the note to Pa.R.C.P. 227.1(c) states, "a motion for post trial relief may be filed following a trial by jury, a trial by a judge without a jury in an action pursuant to Rule 1038 or a trial by a judge without a jury in an action in equity." *Id.* "Logically, **post**-trial motions may not be

filed to orders disposing of **pre**-trial motions or motions relating to proceedings not constituting a trial." *Bostick v. Schall's Brakes and Repairs, Inc.*, 725 A.2d 1232, 1236 (Pa.Super.1999), *appeal denied*, 560 Pa. 694, 743 A.2d 912 (1999) (emphasis added).

¶ 39 In the context of a will contest, our Supreme Court states, "[a] register is a judge, and the admission of a will to probate is a judicial decision, [which] can only be set aside on appeal, and is unimpeachable in any other proceeding...." *In re Sebik's Estate*, 300 Pa. 45, 47, 150 A. 101, 102 (1930). However, the hearing on appeal to the Orphan's court from a decision of the Register of Wills is *de novo*, unless the parties appearing in the proceeding have agreed otherwise. 20 Pa.C.S.A. § 776; *In re Estate of Szmahl*, 335 Pa. 89, 91, 6 A.2d 267, 269 (1939), *overruled in part by, In re Loudenslager's Estate*, 430 Pa. 33, 240 A.2d 477 (1968). *De novo* review in a will contest guarantees full consideration of the case anew by the Orphans' court. *Id.* As the Supreme Court explained:

> A hearing *de novo*... means that the orphans' court shall not arrive at a decision on the basis of the testimony offered before the register, but shall hear afresh all evidence that either party shall desire to present, the burden of proof resting throughout upon the proponent to establish the due execution of the will. The purpose of allowing the probate of the will to be placed in evidence is merely to establish a *prima facie* status, and affects only the order of proof. Such a practice is justified by the fact that a register is a judge, and the admission of a will to probate is a judicial decision. The acceptance in evidence of the probate merely shifts to contestants temporarily the duty to come forward with evidence, but the

proceeding remains at all times...*de novo*.

*Id.* at 92–93, 6 A.2d at 269 (internal quotation marks and citations omitted). *See also In re Ash's Estate, supra.*

¶ 40 Additionally, the Pennsylvania Orphans' Court Rules, Rule 10.2 provides:

**Rule 10.2. Appeals from the Register of Wills**

Appeals from judicial acts or proceedings of the Register of Wills and the practice and procedure with respect thereto shall be as **prescribed by local rules.**

Pa.O.C. Rule 10.2 (emphasis added). Philadelphia Local Rule 10.2.C. provides:

**Philadelphia Local Rule 10.2.C. Appeal from Register**

**(1) Commencement of Appeal**

**(a)** Appeals from the judicial acts or proceedings of the register shall be initiated by filing a notice of appeal with the Clerk on the form supplied by the Clerk....

**(b)** After the notice of appeal has been filed with the Clerk, the Register upon request shall forthwith transmit the record to the Clerk.

**(2) Petition for Citation.**

Contemporaneously with the filing of the notice of appeal, the appellant shall file a petition for citation with the Clerk which shall set forth:

**(a)** the nature of the proceedings before the Register;

**(b)** the basis for the appeal together with copies of all wills involved in the controversy known to be in existence;

**(c)** the names and addresses of all parties in interest, including those who have not yet been made parties to the record; and

**(d)** the facts upon which jurisdiction is based.

Philadelphia Local Rule 10.2.C(1)(a)–(d).

¶ 41 In the instant case, the state Orphans' Court Rules defer to the local rules and the applicable local rules do not require "post-trial" motions in the nature of those required under Pa.R.C.P. 227.1. Moreover, our research has not revealed any indication that a hearing before the Register of Wills constitutes a "trial" for purposes of whether a post-trial motion must be filed to remove a compulsory nonsuit before an appeal can be had before the Orphans' court. Instead, Section 776 of the Decedent's, Estates, and Fiduciaries Code provides that the proceeding on appeal from the decree of the Register of Wills is conducted *de novo.* The local rules governing appeals from the Register of Wills are consistent with the statute, as the local rules facilitate immediate appeal, without any mention of post-trial motions.

¶ 42 Further, the certified record in the present case is vague as to the procedural vehicle by which the Register dismissed Appellant's *caveat.* The Register's decree itself sheds no light on the matter. Additionally, we see in the record that Proponent subsequently asked the Register of Wills to explain the basis for his Decree, a question that went unanswered for the record. Thus, absent any agreement of the parties to the contrary, Appellant's *de novo* appeal to the Orphans' court effectively eliminated from consideration the record of the *caveat* proceedings before the Register of Wills, save for the fact of probate itself. *See Estate of Szmahl, supra.* Accordingly, we decline to impose upon Appellant the requirement of Pa. R.C.P. 227.1(c) for a motion to remove a compulsory nonsuit as a prerequisite for his appeal from the probate decree. *See Estate of Glover,* 447 Pa.Super. 509, 669 A.2d 1011 (1996), *appeal denied,* 547 Pa.

728, 689 A.2d 233 (1997) (recognizing implicitly, right to proceed on appeal from *caveat,* which had been dismissed on grant of nonsuit, without filing motion to remove nonsuit).

¶ 43 Appellant next contends his petition *sur* appeal set forth a *prima facie* case that 1) Proponent killed Decedent and is thereby precluded from benefiting under the will pursuant to the Slayers' Act; 2) the will was the product of undue influence;, and, 3) the will was a forgery. Appellant insists his petition was prematurely dismissed on Proponent's preliminary objections in the nature of a demurrer. Appellant also argues the court erred in requiring Appellant to support the averments in his petition with affidavit or testimony, which are not required under the statute or rules of court. Appellant concludes the court wrongfully deprived him of a citation and his right to a trial on his claims. We disagree.

¶ 44 A demurrer is a preliminary objection that the pleading fails "to set forth a cause of action upon which relief can be granted under any theory of law." *McNeil v. Jordan,* 814 A.2d 234, 238 (Pa.Super.2002) (quoting *Sutton v. Miller,* 405 Pa.Super. 213, 592 A.2d 83, 87 (1991)). For the purpose of testing the legal sufficiency of the pleading, the demurrer admits all properly pleaded material facts, but not conclusions of law. *McNeil, supra.* The court must be able to say with certainty that upon the facts averred, the law will not permit recovery; surmise and conjecture can play no part in the decision. *Schuylkill Navy v. Langbord,* 728 A.2d 964, 968 (Pa.Super.1999). Any doubt should be resolved in favor of overruling a demurrer. *McNeil, supra.* When reviewing a grant of demurrer, we are not bound by the inferences drawn by the court or its conclusions of law. *Id.* "[O]ur scope of review is plenary, allowing us to review the

whole record." *Mistick, Inc. v. Northwestern Nat. Cas. Co.*, 806 A.2d 39, 42 (Pa.Super.2002).

¶ 45 Section 761 of the Decedent's, Estates, and Fiduciaries Code defines the requirements of a petition *sur* appeal:

### § 761. Petitions

All applications to the orphans' court division shall be by petition in the form prescribed by general rules and shall be attested either by an affidavit or by a verified statement. In the case of the latter alternative, the statement shall set forth that it is subject to the penalties of 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities).

**Comment:** Since a verified statement subject to the Crimes Code, 18 Pa.C.S. § 4904, (relating to unsworn falsification to authorities) provides sufficient sanction, attaching an affidavit to petitions is no longer necessary.

20 Pa.C.S.A. § 761. Under the Philadelphia County Orphans' Court Rules,

If the petition sets forth a *prima facie* case, a citation will be issued, directed to all parties in interest, including those not represented on the record, to show cause why the appeal should not be sustained and the judicial act or proceeding complained of be set aside.

Philadelphia Local Rule 10.2.C(3). Thus, the **contestant** must establish a legally sufficient cause of action to obtain a citation from the Orphans' court. *Id.*

¶ 46 Any person "who participates, either as a principal or as an accessory before the fact, in the willful and unlawful killing of another person" is statutorily barred from acquiring or receiving any property or benefit arising from the death of that person. 20 Pa.C.S.A. §§ 8801, 8802. Any property which would have passed to or for the benefit of the slayer by devise or legacy from the dece-

dent shall be distributed as if the slayer predeceased the decedent. 20 Pa.C.S.A. § 8803. For example, a conviction of voluntary manslaughter is a conclusive bar to the slayer's right to distribution of any of the decedent's estate. *In re Kravitz's Estate*, 418 Pa. 319, 211 A.2d 443 (1965) (holding record of wife's conviction and judgment of sentence for husband's murder was conclusive bar to her right to take under or against husband's will, and wife's guilt or innocence of the crime cannot be relitigated in Orphans' court); *In re Estate of Bartolovich*, 420 Pa.Super. 419, 616 A.2d 1043 (1992), *appeal denied*, 534 Pa. 634, 626 A.2d 1154 (1993) (holding husband's criminal conviction for voluntary manslaughter of wife conclusively barred under Slayer's Act husband's right to share in wife's estate and evidentiary hearing in estate proceeding not required). *See also In re Glenn's Estate*, 450 Pa. 461, 299 A.2d 203 (1973) (holding son's petition for advancement of funds from estate to defend against criminal indictment properly denied where son arrested and charged with father's murder); 20 Pa.C.S.A. § 8811 (denying slayer right to insurance proceeds payable to slayer as beneficiary of insurance policy on life of decedent).

¶ 47 However, a conviction of involuntary manslaughter does not conclusively bar a taking under the Slayer's Act. *In re Klein's Estate*, 474 Pa. 416, 378 A.2d 1182 (1977) (holding involuntary manslaughter is not willful killing within meaning of Slayer's Act and person so convicted is not conclusively barred from distribution of victim's estate). Even a felonious killing will not act to bar the slayer of property to which she is otherwise entitled and over which the felonious killing had no effect. *In re Trust Estate of Jamison*, 431 Pa.Super. 486, 636 A.2d 1190 (1994) (holding ultimately that daughter's guilty plea to third degree murder in death of moth-

er/settlor implicated Slayer's Act and daughter forfeited her share of *inter vivos* trust; although mother/settlor did not retain any right to alter disposition of trust property during her lifetime, daughter's share was conditioned on daughter surviving mother; daughter's share distributed to her living children, as if daughter had predeceased mother); 20 Pa.C.S.A § 8808.

¶ 48 Probate is concerned with the determination that the decedent died having left a will and the document(s) offer for probate are the decedent's will. J. Brooke Aker & Thomas A. Boulden, Law of Wills in Pennsylvania § 10.1 (2d ed.2000). Capacity (including age), fraud, forgery, and undue influence all go to the manner and form of execution of a will and are properly considered in proceedings to probate a will. 57 Am.Jur., Wills, § 782 (1948). On the other hand, whether a clause in the will is void because of the status of the legatee or because the legatee murdered the testator are matters properly raised in "suits for construction of a will or to enforce distribution of the estate thereunder, but not in a proceeding to probate the will." *Id.*[7] The Slayer's Act also identifies contests regarding the continuation or forfeiture of rights or benefits by devise or legacy from the decedent to a slayer as generally matters for the distribution stage of the estate. *See* 20 Pa.C.S.A. § 8803.

¶ 49 In the instant case, Appellant has raised the Slayer's Act in his petition *sur* appeal from probate of Decedent's 1995 will. We agree with the trial court that the preferred disposition of Appellant's Slayer's Act challenge is to dismiss the exception without prejudice to Appellant's right to raise the Slayer's Act as a bar to **distribution** in the event of appro-

priate proof. Thus, we will not further discuss it.

¶ 50 Moreover, Appellant has not made any argument on appeal or raised any matter with respect to the court's dismissal of Appellant's petition to remove Proponent as executrix of the estate on the basis of the Slayer's Act. Accordingly, we consider as abandoned on appeal any challenge to the court's decision to deny Proponent's removal as executrix of Decedent's estate.

¶ 51 We now turn our attention to whether Appellant's petition makes a legally sufficient *prima facie* case for undue influence. A presumption of validity arises once a will is probated, and the burden shifts to the contestant to prove undue influence. *In re Clark's Estate, supra; Estate of Angle,* 777 A.2d 114 (Pa.Super.2001); *Burns, supra; In re Estate of Jakiella,* 353 Pa.Super. 581, 510 A.2d 815 (1986).

To meet this burden, the contestant must establish by clear and convincing evidence that: (1) the testator was of weakened intellect a the time the will was executed; (2) the proponent of the will stood in a confidential relationship with the testator; and (3) the proponent received substantial benefit under the will.

\* \* \*

The "weakened intellect" which must be shown in order to establish a *prima facie* case of undue influence upon the testator need not amount to testamentary incapacity. Although testamentary capacity is to be determined by the condition of the testator at the very time he executes a will, evidence of incapacity for a reasonable time before or after the making of a will is admissible as an indication of lack of

---

**7.** *See generally* 79 Am.Jur.2d, Weapons and Firearms to Wills, §§ 756–758 (2002).

capacity on the day the will is executed. While a testator may dispose of his property as he sees fit, the law is rigid in its insistence that one of weak mind, whether from inherent cause or by reason of illness, shall not be imposed upon by the art and craft of designing persons.

* * *

For purposes of voiding a will on the ground of undue influence, a confidential relationship exists whenever circumstances make it certain that the parties did not deal on equal terms but that on the one side there was an overmastering influence, and on the other, dependence or trust, justifiably reposed. *Burns, supra* at 1162–63 (internal citations omitted). Additionally, this Court has explained:

The term "influence" does not encompass every line of conduct capable of convincing a self-directing person to dispose of property in one's favor. The law requires that the influence be control "acquired over another that virtually destroys [that person's] free agency." Conduct constituting influence **must** consist of "imprisonment of the body or mind, or fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery, or physical or moral coercion, to such a degree as to prejudice the mind of the testator, to destroy his free agency and to operate as a present restraint upon him in the making of a will." A parent-child relationship does not establish the existence of a confidential relationship nor does the fact that the proponent has a power of attorney where the decedent wanted the proponent to act as attorney-in-fact.

*In re Estate of Angle, supra* at 123 (internal citations omitted) (emphasis added). An allegation of alcohol or drug use does not raise a presumption of weakened intel-

lect. *In re Kerr's Estate*, 255 Pa. 399, 100 A. 127 (1917); *In re Masseth's Estate*, 213 Pa. 136, 62 A. 640 (1905).

¶ 52 Because undue influence has been described as subtle, intangible, yet recognizable by human experience, it may be shown by circumstantial evidence. *In re Ziel's Estate*, 467 Pa. 531, 359 A.2d 728 (1976). Nevertheless, opportunity, suspicion and conjecture do not create or amount to proof of either a confidential relationship or undue influence and cannot carry the cause. *In re Thompson's Estate*, 387 Pa. 82, 126 A.2d 740 (1956); *In re Quein's Estate*, 361 Pa. 133, 62 A.2d 909 (1949). Cohabitation is not of itself sufficient evidence of undue influence. *See Rudy v. Ulrich*, 69 Pa. 177 (1871). Proof only of opportunity to exercise undue influence is not sufficient. *In re Cookson's Estate*, 325 Pa. 81, 188 A. 904 (1937). Efforts at persuasion or solicitation do not amount to undue influence. *Id.*

¶ 53 In the instant case, Appellant's petition *sur* appeal sets forth the following averments possibly related to undue influence:

**BACKGROUND**

10. Decedent had a long clandestine relationship with [Proponent]; Decedent's children and grandsons never knew [Proponent] until his final hospitalization in 1999.

11. Decedent had a close and loving relationship with his children and grandsons, spending a great deal of time with them on a regular basis and celebrating virtually every holiday with them.

12. [Proponent] was not related to Decedent by blood or marriage.

13. Decedent had a long history of drug and alcohol abuse, as well as a long history of chronic lung disease; as a

result Decedent suffered from a weakened mental intellect.

14. [Proponent] attempted to control Decedent's personal and financial affairs, and to exclude his family members from influencing his personal and financial decisions; [Proponent]'s attempt to control decedent's affairs is best illustrated by her attempt to inappropriately control decedent's medical care during his final hospitalization.

20. After Decedent was intubated and unable to speak, [Proponent] produced a Power of Attorney attached to an Advance Directive purportedly giving [Proponent] decision making power over decedent's medical care.

23. After Decedent died on October 15, 1999, [Proponent] produced a Will prepared by the law firm of [ ] of Cherry Hill, New Jersey [ ] leaving the bulk of the estate to [Proponent].

25. [Proponent] was the person who introduced Decedent to the lawyers at [ ], as [Proponent] admitted under oath.

29. [The law firm's] notes show that Decedent had requested that a trust be created for [Proponent] with the remainder going to his children; [the lawyer] admitted under oath that he advised Decedent not to create a trust and to give [Proponent] the bulk of the estate.

32. [The law firm] also prepared an Advance Directive with a Power of Attorney, which was allegedly executed by Decedent on March 13, 1995, four (4) days before the alleged execution of the 1995 will; [the lawyer] could not adequately explain why decedent signed the Advance Directive on March 13, 1995 and then returned to [the law firm]'s offices only four (4) days later to execute the 1995 Will, instead of executing both documents on the same day.

33. [Proponent] also claims to have a Holographic Will prepared by Decedent in 1983 (the "Holographic Will"), which Appellant believes and avers was revoked by physical destruction because decedent terminated his relationship with [Proponent] after the date of the Holographic Will and moved in with another woman, [ ]. [Proponent] has refused to produce the original Holographic Will despite numerous requests by [Appellant]. A copy of the Holographic Will is attached hereto as Exhibit "C".

## UNDUE INFLUENCE

39. [Proponent] was in a confidential relationship with Decedent.

40. Decedent suffered from a weakened mental intellect.

41. Decedent was domiciled in New Jersey, where he resided continuously for more than ten (10) years prior to his death.

42. Decedent had no residence in Pennsylvania.

43. The 1995 Will and the 1987 Will were written in New Jersey, by a New Jersey attorney; both Decedent and [Proponent] were residents and domiciliaries of New Jersey.

44. Accordingly, the law of New Jersey should apply.

45. Under New Jersey law, there is a presumption of undue influence where there is (1) a confidential relationship between beneficiary and testator, and (2) there are suspicious circumstances. *Haynes v. First National State Bank of New Jersey*, 87 N.J. 163, 432 A.2d 890 (1981). Furthermore, where the testator's attorney is also counsel to the Proponent of a Will, there is a conflict of interest which creates a presumption of undue influence shifting the burden of proof to the Proponent to show the absence of undue influence. *Id.*

46. The Scrivener of the 1995 and 1987 Wills represented both decedent and [Proponent].

47. [Proponent] receives the bulk of the estate under the 1995 Will and the 1987 Will.

48. Accordingly, under the law of New Jersey and Pennsylvania, the execution of the 1995 Will and the 1987 Will were obtained by undue influence exerted over the decedent by [Proponent].

(Appellant's Petition for Citation at 2–6; R.R. 28a–32a). In passing on Appellant's petition for purposes of review of the court's ruling on preliminary objections in the nature of a demurrer, it is only the well-pleaded factual averments that we accept as true. *See McNeil, supra.* Bold statements such as, but not limited to, "Proponent was in a confidential relationship with Decedent" or "Decedent suffered from a weakened mental intellect" or the paragraphs pertaining to the application of New Jersey law are, of course, wholly conclusions of law.

 ¶ 54 Nevertheless, taking only the well-pleaded factual averments as true, many of the paragraphs contained in Appellant's petition are, in whole or in part, only suspicion and conjecture, and do not create or amount to proof of a confidential relationship or a weakened intellect. *See In re Thompson's Estate, supra.* The alleged clandestine affair between Decedent and Proponent is not of itself sufficient evidence of undue influence. *See Rudy, supra.* In that regard, Appellant's averments of influence raise inconsistent inferences that actually dim Appellant's claim. For example, Appellant claims Proponent "attempted" to control Decedent's finances and personal affairs, but does not tell us when or by what means Proponent allegedly did so. Appellant also asserts Decedent enjoyed a close and loving relationship with his former family and spent considerable time with them and, by necessary implication, away from Proponent (where the relationship was a "clandestine" one until shortly before decedent's death). Appellant tells us that at some point Decedent even took up with someone else and actually terminated his relationship with Proponent, who was evidently not so successful in her alleged attempts to control Decedent's personal affairs. These averments actually defy logical inference in support of Appellant's contention of undue influence.

¶ 55 Further, Appellant's bare statements regarding Decedent's alleged drug/alcohol abuse and chronic lung disease do not of themselves provide sufficient proof of a weakened mental intellect at the time he executed any of his wills. *See In re Kerr's Estate, supra.* As Justice Musmanno wrote in *King's Estate,* 369 Pa. 523, 87 A.2d 469 (1952):

[O]ne may be physically weak but have a perfectly sound and strong mind.

So long as the mind, like the captain of a stricken ship, is free to dictate direction and course, its decision will not be questioned in law even though the body be crippled with pain and the spirit awry with torment.

*Id.* at 530, 87 A.2d at 473. *See also In re Lauer's Estate,* 351 Pa. 438, 41 A.2d 552 (1945) (holding absent more, mere fact that decedent was sick or ill does not establish weakened intellect); *In re Allison's Estate,* 210 Pa. 22, 59 A. 318 (1904) (holding that evidence of age, sickness, distress, debility of body, physical infirmity are insufficient to show undue influence; *i.e.,* influence that testator was not free agent but mere implement of another's craft and superior will). Appellant's averments are particularly vague in this regard and provide no practical evidence that Decedent's mind was easily controlled as to business matters, readily distracted, or

feeble for a reasonable time before, at, or after the making of his will. *See Burns, supra.*

¶ 56 Appellant provides no evidence that Proponent wrote or dictated the 1995 will or Power of Attorney, that her advice was sought or taken, that she was even present when the 1995 will was either drafted or executed, that she solicited the bequest in her favor, or that she exercised the Power of Attorney at any time from 1995 when it was executed until the one time in 1999. *See In re Thompson's Estate, supra.* We simply do not see sufficient evidence in Appellant's petition that the parties dealt on unequal terms or that Decedent suffered from a weakened intellect.

¶ 57 As for the averment that Proponent inherits "the bulk of the estate" under the most recent will, we note the full value of the estate is not shown. We further note that Proponent received less of Decedent's estate under the 1995 will than she received under Decedent's prior wills. We conclude Appellant's petition sets forth little or no evidence of Proponent's exercise of imprisonment of Decedent's body or mind, or fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery, or physical or moral coercion, to such a degree as to prejudice Decedent's mind, to destroy his free agency or to operate as a present restraint upon him in the making of his will. *See In re Estate of Clark, supra.* In light of the relevant legal principles applicable to Appellant's claim, we hold Appellant's petition does not raise a *prima facie* case for undue influence. *See In re Thompson's Estate, supra.*

¶ 58 Next, we must examine Appellant's petition to determine whether he has averred *prima facie* evidence of forgery. A contestant asserting "fraud or forgery [of a will] has the burden of proving the facts upon which the alleged fraud or forgery is based and these facts must be proved by evidence which is clear, direct, precise and convincing" to state a cause of action. *In re Elias' Estate, supra. See also In re Estate of Presutti, supra* at 806 (explaining when issue of forgery arises, contestant must prove forgery by clear and convincing evidence). Furthermore, "mere suspicion and conjecture cannot take the place of evidence." *In re Estate of Angier,* 381 Pa.Super. 114, 552 A.2d 1121, 1122 (1989).

¶ 59 Ordinarily, forgery is the unauthorized signing of a testator's will by another, but forgery may also arise from a fabrication of a dispositive scheme over the testator's genuine signature. *In re Rosenthal's Estate,* 339 Pa. 488, 15 A.2d 370 (1940); *In re Kane's Estate,* 312 Pa. 531, 168 A. 681 (1933). Determining the authenticity of a decedent's handwriting usually presents an issue of fact. *In re Estate of Presutti, supra.* Before a hearing is granted on the issue of forgery, however, the contestant "must first satisfy the court that the ends of justice call for a verdict against the will or [that the court] is so uncertain on this point that [it] could conscionably sustain a finding either way." *In re Rosenthal's Estate, supra.* To this end, the contestant must disclose all of the facts and circumstances supporting the allegation; a bare allegation of forgery will not suffice. *In re Shaffer's Estate,* 332 Pa. 225, 2 A.2d 764 (1938).

¶ 60 In the present case, Appellant's petition *sur* appeal sets forth the following averments related to forgery:

49. Page One of the 1995 Will contains all six specific bequests and the residuary clause leaving the remainder of Decedent's estate to Proponent.

50. The fourth bequest states "To my granddaughter, Christine Arena...";

Decedent only had two grandsons, and had no granddaughter.

51. Said discrepancy was not merely a typographical error; page one of the 1995 Will was switched after execution, and accordingly, [Proponent] should be precluded from acquiring or receiving any benefit from decedent's Estate.

(Appellant's Petition for Citation at 6–7; R.R. 32a–33a). Appellant presented no other evidence of forgery, such as internal inconsistencies in the will, or variations in the typed form. At oral argument before the Orphans' court, Appellant simple argued that his father would never have signed the 1995 will as it was worded, (alluding to ¶ 50 in the petition); and, therefore, Proponent must have switched the page. (N.T., 8/15/01, at 17–19). In view of this lack of evidence, we agree with the Orphans' court that Appellant failed to raise a *prima facie* case for forgery.[8]

¶ 61 Moreover, we note that if the allegation that the entire first page had been switched must be taken as true, then the whole will would fail, because all of the bequests and the express revocation clause appear on the allegedly switched first page. Thus, the failure of the first page of Decedent's 1995 will would mean revival of Decedent's 1987 will. As we have already determined, Appellant has no standing to raise claims going to the validity of the entire will. Accordingly, the court correctly dismissed Appellant's petition with regard to his forgery claim.

¶ 62 In Appellant's final issue, he argues in the alternative that the court should have allowed him the opportunity to amend his petition to correct its defects. Appellant contends that his petition is curable, and insists the court had a duty to

grant him leave to amend the petition. Appellant concludes the court wrongfully denied him his right to amend and, thereby deprived him of his right to a trial on the merits of his claims. For the following reasons, we disagree.

¶ 63 "[A] cause of action does not consist of facts...but of the unlawful violation of a right, which the facts show.... The facts are merely means, and not the end. They do not constitute the cause of action, but they show its existence by making the wrong appear." *Framlau Corporation v. Delaware County*, 223 Pa.Super. 272, 299 A.2d 335, 337 (1972) (quoting *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069, 1072 (1927)). When a preliminary objection is raised in the nature of a demurrer, we are limited to determining whether, on the basis of the allegations pled, any cause of action may be recognized at law. *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 566 Pa. 494, 781 A.2d 1189 (2001); *In re Adoption of S.P.T.*, 783 A.2d 779, 782 (Pa.Super.2001).

¶ 64 Rule 1033 of the Pennsylvania Rules of Civil Procedure provides:

**RULE 1033. AMENDMENT**

A party either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the

---

**8.** What Appellant has charged as definitive proof of forgery is actually a "misnomer," a mistake in the form of an erroneous name; *i.e.,* an error in reference to the name of a legatee. Such a misnomer is correctable at the time of audit or distribution. A misnomer does not necessarily prove forgery.

pleading to the evidence offered or admitted.

Pa.R.C.P. 1033. With respect to the right to amend a pleading, our Court has stated:

Even where a trial court sustains preliminary objections on their merits, it is generally an abuse of discretion to dismiss a complaint without leave to amend. There may, of course, be cases where it is clear that amendment is impossible and where to extend leave to amend would be futile.... [However], [t]he right to amend should not be withheld where there is **some reasonable possibility** that amendment can be accomplished successfully. In the event a demurrer is sustained because a complaint is defective in stating a cause of action, if it is evident that the pleading can be cured by amendment, a court may not enter a final judgment, but must give the pleader an opportunity to file an amended [pleading]....

*Harley Davidson Motor Co., Inc., v. Hartman,* 296 Pa.Super. 37, 442 A.2d 284, 286 (1982) (internal citations and quotation marks omitted) (emphasis added). Nevertheless, a defective pleading that cannot be cured by amendment is appropriately dismissed upon a demurrer. *Framlau, supra.*

¶ 65 In the instant case, a careful study of Appellant's petition shows the defects in his petition with respect to his standing or his claim of forgery cannot be cured by amendment. Further, his claims of weakened intellect and confidential relationship are manifestly deficient. We note that Appellant was allowed to depose Proponent and present a number of witnesses at the *caveat* hearing before the Register of Wills. Thus, Appellant has had ample opportunity to develop and refine his claims before and after the Register of Wills' dismissal of the *caveat.*

¶ 66 Appellant also had an opportunity to amend his petition as of right, after the preliminary objections were filed. *See* Pa. R.C.P. 1028(c)(1) (providing party may file amended pleading as of course within twenty days after service of preliminary objections; if amended pleading filed, preliminary objections shall be deemed moot). Appellant failed to seize that opportunity, even when he knew the nature of Proponent's objections.

¶ 67 Additionally, we reject Appellant's assertion at the August 15th hearing on the preliminary objections, that he was simply unfamiliar with the pleading rules in Orphan's court. Appellant is a practicing attorney of considerable experience, who knew or should have known the kind and quality of facts necessary to plead a *prima* facie case of undue influence or forgery, and that the requirements attendant to pleading *prima facie* claims do not vary within the individual civil courts of common pleas. Thus, Appellant cannot claim ignorance or inexperience as an excuse.

¶ 68 Moreover, when the court asked Appellant for a proffer of additional evidence, Appellant offered no other substantive facts to support his claims. We conclude, therefore, Appellant has failed to show some reasonable possibility that amendment would cure the defects in his petition. Thus, allowing Appellant leave to amend his petition would have been futile. Also, leave to amend under these circumstances would only serve to delay the matter unjustifiably and unnecessarily protract matters pertaining to Decedent's estate to the prejudice of the estate and all of its beneficiaries. Although the court stated it might have been inclined to allow Appellant to file an amended petition had the demurrer been the only objection, we see no abuse of discretion in the court's

ultimate decision to dismiss the petition. *See Framlau, supra.*

¶ 69 Based upon the foregoing, we conclude that Appellant has standing to contest Decedent's 1995 will, but only in part, and his petition does not violate the rules of court as alleged. Nevertheless, we hold that Appellant's petition is legally insufficient and was, therefore, properly dismissed.

¶ 70 Order affirmed.