J-A17010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ESTATE OF: BORIS KRICHMAR, DEC'D. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: GALINA KRICHMAR AND DANIEL KRICHMAR | |
| | No. 1511 EDA 2014 |

Appeal from the Decree April 28, 2014
In the Court of Common Pleas of Philadelphia County
Orphans' Court at No(s): 1788 DE of 2006

_____

| | |
|---|---|
| IN RE: ESTATE OF: BORIS KRICHMAR, DEC'D. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: MANUEL SPIGLER | |
| | No. 1753 EDA 2014 |

Appeal from the Order April 28, 2014
In the Court of Common Pleas of Philadelphia County
Orphans' Court at No(s): 1788 DE of 2006

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and OTT, J.

MEMORANDUM BY OTT, J.:                **FILED DECEMBER 01, 2015**

This appeal, brought by Galina and Daniel Krichmar ("Galina" or "Daniel," individually, or "the Krichmars," collectively), and cross appeal, brought by Manuel Spigler, arise from the final decree entered April 28,

2014, in the Court of Common Pleas of Philadelphia County, that denied by operation of law exceptions to adjudications entered by the orphans' court on November 27, 2013. The case arises from the death of Boris Krichmar, who died on January 31, 2005, in a fire that also took the life of his only issue, his son Valeriy. Both Boris and Valeriy died intestate.[1] Appellant Daniel Krichmar is the brother of Boris, uncle of Valeriy, and intestate heir of the Estate of Valeriy Krichmar.[2] Appellant Galina Krichmar is the daughter of Daniel, is the former administratrix of the Estate of Boris Krichmar, and is administratrix of the Estate of Valeriy Krichmar. Cross-appellant Manuel Spigler is the former attorney of Anna Guettel, who is the surviving spouse of Boris,[3] and administratrix D.B.N. of the Estate of Boris Krichmar. Based upon the following, we reverse the decree and remand for further

---

[1] In the orphans' court, both estates were considered together at one hearing. The appeals in these cases were listed consecutively, and have been likewise considered together. The companion appeal concerning Valeriy's estate is *In re Estate of Valeriy Krichmar*, ___ A.3d ___ [1510 EDA 2014] (Pa. Super. 2015) (unpublished memorandum).

[2] Under 20 Pa.C.S. § 2103(5), Daniel is an intestate heir of Valeriy's estate as is his daughter, Appellant Galina Krichmar, but under 20 Pa.C.S. § 2104(1) Daniel receives the entire share as long as he is living.

[3] On June 23, 2011, this Court held that a valid marriage existed between Guettel and Boris, and that Guettel did not desert Boris prior to his death. *See Estate of Boris Krichmar*, 31 A.3d 752 (Pa. Super. 2011) (unpublished memorandum).

proceedings consistent with this memorandum. We dismiss the cross-appeal.

The orphans' court, which addressed the estate of Boris and the estate of Valeriy together at one hearing, has provided a thorough summary of the background of this case:

> Boris Krichmar and his only issue, a son named Valeriy Krichmar, died on January 31, 2005 as the result of a fire which ravaged their residence at 9276B Jamison Avenue, Philadelphia, Pennsylvania. At the time of their deaths neither Boris nor Valeriy was known to have a will.
>
> On February 8, 2005, Daniel Krichmar, brother of Boris Krichmar, renounced his right to serve as administrator of the estate of Boris and requested that the Register of Wills grant Letters of Administration to Daniel's daughter, a niece of Boris, named Galina Krichmar. On February 11, 2005, the Register of Wills appointed Galina Krichmar to serve as Administratrix of the Estate of Boris Krichmar.
>
> On June 15, 2005, Anna Guettel filed a Petition with the Register of Wills in which Petition Anna claimed to be the wife and sole heir of Boris Krichmar and asked the Register to revoke the Letters of Administration which had been issued to Galina Krichmar. After holding Hearings on May 17, 2006 and August 9, 2006, the Register issued a Decree dated October 20, 2006 wherein the Register revoked the Letters of Administration which had been issued to Galina Krichmar and stated that he would issue Letters of Administration D.B.N. to Anna Guettel as the spouse and sole intestate heir of Boris Krichmar.[4]

_____

[4] Technically, the Register of Wills' determination that Guettel was the "sole intestate heir" was premature. Whether Guettel is the sole intestate heir depends upon whether Valeriy survived Boris. **See** 20 Pa.C.S. § 2102(4) ("The intestate share of a decedent's surviving spouse is: … If there are surviving issue of the decedent one or more of whom are not issue of the surviving spouse, one-half of the intestate estate.").

On December 20, 2006, the Register of Wills issued a Decree whereby he appointed Anna Guettel to serve as Administratrix D.B.N. of the Estate of Boris Krichmar, Deceased.

On February 20, 2007, the Register of Wills issued a Decree whereby he appointed Galina Krichmar to serve as Administratrix of the Estate of Valeriy Krichmar, Deceased.

After holding hearings between January 27, 2009 and February 9, 2009, [the court] issued an Opinion and 4 Decrees dated November 16, 2009, wherein [the court] Dismissed the Appeal of Daniel and Galina Krichmar from the Decree of the Register of Wills dated October 20, 2006; [the court] Denied an Amended Petition For Declaratory Judgment filed by Daniel and Galina Krichmar seeking a Declaration that Anna Guettel had forfeited her spousal rights; [the court] Denied a Petition filed by Daniel and Galina Krichmar seeking to Remove Anna Guettel from her Office of Administratrix D.B.N. of the Estate of Boris Krichmar, Deceased; [the court] Ordered Anna Guettel, Administratrix D.B.N., to file an Account of her administration of the Estate of Boris Krichmar, Deceased; [the court] Ordered Galina Krichmar, Former Administratrix, to file an Account of her Administration of the Estate of Boris Krichmar, Deceased; and, [the court] Ordered Jeffrey R. Solar, Esquire, Former Counsel to Galina Krichmar, Former Administratrix as aforesaid, to file an Account of all assets he received from the Estate of Boris Krichmar, Deceased.

By separate Decree dated April 19, 2011, [the court] Ordered Galina Krichmar, Administratrix of the Estate of Valeriy Krichmar, Deceased, to file an Account of her Administration of the Estate of Valeriy Krichmar, Deceased.

On June 23, 2011, a panel of our Superior Court affirmed [the court's] Decrees dated November 16, 2009. [*See Estate of Krichmar*, 31 A.3d 752 (Pa. Super. 2011) (unpublished memorandum)].

The First And Final Account of Anna Guettel, Administratrix D.B.N. of the Estate of Boris Krichmar, Deceased, was filed on December 29, 2009; bears Control Number 095450; and, appeared as Number 2 on my Audit List of February 1, 2010. Objections to said Account were filed by Daniel Krichmar,

- 4 -

individually, and, by Galina Krichmar as Administratrix of the Estate of Valeriy Krichmar, Deceased. Daniel Krichmar also filed a Claim against the Estate of Boris Krichmar, Deceased, in the amount of $66,650.00. Galina, in her capacity as Administratrix of the Estate of Valeriy Krichmar, Deceased, also filed a Claim against the Estate of Boris Krichmar, Deceased, in the amount of $ 50,928.48.

The First And Final Account of Galina Krichmar, Former Administratrix of the Estate of Boris Krichmar, Deceased, was filed on April 18, 2011; bears Control Number 115128; and, appeared as Number 3 on my Audit List of June 6, 2011. Objections to said Account were filed by Anna Guettel, Individually and as Administratrix D.B.N. of the Estate of Boris Krichmar, Deceased.

The First And Final Account of Jeffrey R. Solar, Esquire, Former Counsel to Galina Krichmar, Former Administratrix as aforesaid, was filed on January 4, 2010; bears Control Number 105000; and, appeared as Number 3 on my Audit List of February 1, 2010. Objections to said Account were filed by Anna Guettel, Individually and as Administratrix D.B.N. of the Estate of Boris Krichmar, Deceased.

The Account of Galina Krichmar, Administratrix of the Estate of Valeriy Krichmar, Deceased, was filed on May 3, 2011; bears Orphans Court Number 545 DE of 2011; bears Control Number 111224; and, appeared as Number 2 on my Audit List of June 6, 2011. Objections to said Account were filed by Anna Guettel, Individually and as Administratrix D.B.N. of the Estate of Boris Krichmar, Deceased.

On April 10, 2012, Anna Guettel filed an "Amended Petition For Citation Directed To Galina Krichmar, Former Administratrix Of The Estate Of Boris Krichmar, Dec'd And Daniel Krichmar To Show Cause Why The Record And Non-Record Costs Of Anna Guettel Should Not Be Taxed Against Them". Said Petition bears Control Number 121083. Daniel and Galina Krichmar filed an Answer to said Amended Petition.

In early September 2012, disagreements between Anna Guettel and her Counsel, Manuel A. Spigler, Esquire, resulted in the withdrawal of Mr. Spigler as Counsel for Anna.

On December 13, 2012, Mr. Spigler filed a "Petition For Leave To Intervene And Interplead" which bears Control Number 123870. In said Petition, Mr. Spigler seeks to intervene as a creditor of the Estate of Boris Krichmar. Daniel and Galina Krichmar filed an Answer to said Petition.

On December 14, 2012, Mr. Spigler filed a "Petition For Counsel Fees And Costs" which bears Control Number 123884. In said Petition, Mr. Spigler seeks approval of counsel fees and costs for his representation of Anna Guettel as Administratrix of the Estate of Boris Krichmar. Daniel and Galina Krichmar filed Objections and a Response to said Amended Petition.

Beginning on February 4, 2013 and ending on February 8, 2013, hearings were held on the aforementioned Accounts and Petitions. At said hearings [the court] heard the testimony of Manuel Spigler, Esquire; Jeffrey Solar, Esquire; Galina Krichmar; JoAnn Conti; and, Anna Guettel.

Manuel A. Spigler, Esquire, offered 40 exhibits which were marked Exhibit "Spigler 1" through Exhibit "Spigier 39", and, Exhibit S-1. Daniel and Galina Krichmar offered 20 exhibits which were marked as Exhibit "K-1" through "K-20". Although all parties were required to attend the hearings per my Decree, Daniel Krichmar did not attend the hearings. On February 8, 2013, Galina Krichmar appeared before this Court *pro se* as her Counsel, Ms. Kamenitz, did not attend the hearing.

On February 4, 2013, during the first day of the hearings, after considering the testimony and exhibits presented on the issue, [the court] granted Mr. Spigler's petition to intervene as a creditor of the Estate of Boris Krichmar.

Orphans' Court Opinion, 11/27/2013, at 1–5. On November 27, 2013, the orphans' court issued an opinion together with adjudications and decrees in both the estate of Boris and the estate of Valeriy.

## ORPHANS' COURT'S DETERMINATIONS

In its opinion, the orphans' court addressed four issues:

(1) whether certain life insurance proceeds are an asset of Boris or Valeriy's estate?; (2) whether certain fire loss proceeds, both for personal property loss and damage to real property, are an asset of Boris or Valeriy's estate?; (3) whether Mr. Spigler's claim for counsel fees and costs should be approved?; and (4) whether docket and non-docket costs, as well as counsel fees, should be taxed against Daniel and Galina Krichmar?

Orphans' Court Opinion, 11/27/2013, at 5–6.   The court determined:

(1)     Life insurance proceeds, in the amount of $140,915.00, that had been deposited by Galina into the account for Boris' estate, but which she maintained were an asset of Valeriy's estate, were solely an asset of Boris' estate;

(2)     Real property fire loss proceeds, in the amount of $78,464.09, were to be divided equally between Boris' and Valeriy's estates, as well as fire loss proceeds of $14,000.00, held in escrow by the City of Philadelphia; personal property fire loss proceeds, in the amount of $57,000.00, were to be divided equally between Boris' and Valeriy's estates;[5]

(3)     Spigler was entitled to counsel fees in the amount of one-third of the gross estate of Boris, plus costs; and

(4)     Guettel was entitled to taxed costs (docket and non-docket costs) against the Krichmars,[6] and taxed costs in the form

_____

[5] We note this appeal does not concern the orphans' court's determinations regarding real property fire insurance proceeds and personal property fire insurance proceeds.   Spigler's cross appeal does challenge the court's determinations regarding these fire loss proceeds.

[6] Specifically, the court determined Guettel was entitled to taxed costs against the Krichmars for their appeal from the decree of the Register of Wills and their declaratory judgment action, and awarded $695.00 for docket costs and $2,939.58 for non-docket costs. *See* Orphans' Court Opinion, 11/27/2013, at 18.

of counsel fees for the Krichmars' efforts to probate a fraudulent will.[7]

**See** Orphans' Court Opinion, 11/27/2013, at 6–21.

In conjunction with this Opinion, the court issued four Adjudications. The court (1) confirmed, as modified, the first and final account of Anna Guettel, administratrix D.B.N. for the Estate of Boris Krichmar, (2) confirmed, as modified, the first and final account of Galina Krichmar, former administratrix for the Estate of Boris Krichmar,[8] (3) confirmed the first and final account of Jeffrey R. Solar, Esquire, for the Estate of Boris Krichmar,[9] and (4) confirmed, as modified, the account of Galina Krichmar, administratrix of the Estate of Valeriy Krichmar.[10]

---

[7] The court determined Guettel was entitled to $6,720.00 against the Krichmars as taxed costs in the form of counsel fees. **Id.** at 20–21.

[8] In its adjudication confirming, as modified, Galina's first and final account of Boris' estate, the court surcharged Galina as follows: $140,915.00 for omitted life insurance proceeds, $62,063.71 for stricken disbursements, $25,773.17 for stricken mortgage payments, $14,023.00 for stricken counsel fees of Jeffrey Solar, Esquire, and $5,946.00 for stricken inheritance tax. **See** Adjudication of Estate of Boris Krichmar, Deceased, Sur account entitled First and Final Account of Galina Krichmar, Administratrix, 11/27/2013, at 6.

[9] This adjudication is not a subject this appeal.

[10] This adjudication is the subject of the companion appeal, **In re Estate of Valeriy Krichmar**, ___ A.3d ___ [1510 EDA 2014] (Pa. Super. 2015) (unpublished memorandum).

Further, by decree, the court formally granted the petition of Manuel Spigler to intervene, which the court had orally granted at the hearing on February 4, 2013. In addition, the court issued three decrees that dismissed as moot three petitions "because appropriate Relief had been Granted by separate Opinion and Adjudications bearing even date herewith." Specifically, these petitions were: (1) Guettel's petition for citation for taxation of record and non-record costs directed to the Krichmars, (2) Guettel's motion for leave to amend petition for citation for taxed costs and non-record costs directed to the Krichmars, and (3) Spigler's petition for counsel fees and costs, which was filed against Guettel.

## APPEAL AT 1511 EDA 2014

At the outset, we state our standard of review:

When an appellant challenges a decree entered by the Orphans' Court, our standard of review "requires that we be deferential to the findings of the Orphans' Court."

[We] must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*Estate of Brown*, 30 A.3d 1200, 1206 (Pa. Super. 2011) (citations omitted).

In their appeal, the Krichmars raise five questions, as follows:

- 9 -

1. Did the lower court err by permitting Manuel Spigler, Esq., to intervene and by charging the Estate of Boris Krichmar with his counsel fees?[11]

2. Did the lower court err by capriciously and deliberately disallowing undisputed disbursements that a person of ordinary intelligence could not ignore, discount or disapprove and by surcharging her for said items?

3. Did the lower court err when it taxed costs and counsel fees against [the Krichmars] as a sanction for their efforts to probate a will that they immediately disavowed after a handwriting expert they hired declined to endorse it?

4. Did the lower court properly hold that life insurance proceeds were the property of the estate of the insured, who, according to the certified death certificate, died before the beneficiary?

5. Did the lower court err when it overruled objections to Guettel's undocumented administration expenses?

The Krichmars' Brief at 9–10.

From the above claims, we have distilled the key issue, namely, the fourth issue involving life insurance proceeds. The Krichmars' challenge to

_____

[11] In connection with the adjudication of Galina's account, the orphans' court surcharged Galina, and from the surcharges awarded Spigler counsel fees of $52,330.01, finding Spigler was entitled to receive counsel fees in the amount of one-third of the gross estate of Boris less $20,000.00 paid on account, plus $9,699.73 in costs. *See* Adjudication of Estate of Boris Krichmar, Deceased, Sur account entitled First and Final Account of Galina Krichmar, Administratrix, 11/27/2013, at 6–7.

In calculating one-third of Boris' estate, the orphans' court used the following sums: $140,915.00 in life insurance proceeds, $46,232.04 in fire insurance proceeds for real property, $28,500.00 in fire insurance proceeds for personal property, $840.00 in value of cars, $503.00 in Social Security Benefits, $20,000.00 in one-half value of premises 9276B Jamison Avenue. *See id.* at 6.

the orphans' court's ruling that Boris' estate is entitled to the life insurance proceeds, in the amount of $140,915.00, is of central importance and affects the determination of Galina's surcharge, Spigler's attorney fees, and the administration of Valeriy's estate. Therefore, we will consider this issue first.

## LIFE INSURANCE PROCEEDS

Initially, we note that because Boris, who was the insured, and Valeriy, who was the beneficiary, died on the same day, the order of death has critical significance to the question of entitlement to the life insurance proceeds. We further note, preliminarily to our discussion, that a certified death certificate "shall constitute *prima facie* evidence of its contents." 35 P.S. § 450.810. However, "it is always open to explanation and contradiction." **Kubacki v. Metropolitan Life Ins. Co.**, 164 A.2d 48, 53 (Pa. Super. 1960), *citing* **Griffin v. National Mining Co.**, 193 A. 447 (Pa. Super. 1937).

Boris owned a life insurance policy with Principal Life Insurance with a death benefit in the amount of $140,915.00. The beneficiary was "Valeriy Krichmar, son, if living, otherwise to the Estate of Boris Krichmar." **See** Exhibit K-3. During the hearing, the death certificates of Boris and Valeriy were introduced into evidence by the Krichmars. The death certificate of Boris indicates he died at the residence at 6:10 a.m. The death certificate of Valeriy reflects that he was pronounced dead at the hospital at 6:17 a.m. Galina, believing Valeriy survived Boris and was entitled to the life insurance

- 11 -

proceeds as beneficiary, did not include this asset in her account of Boris' estate. Rather, she included the life insurance proceeds in her account for Valeriy's estate.

At the hearing, Spigler, on his own behalf and not as attorney for Guettel, presented the testimony of Emergency Medical Technical (EMT) JoAnn Conti to refute the time of death recorded on Valeriy's death certificate. The orphans' court summarized Conti's testimony as follows:

> Emergency Medical Technician JoAnn Conti ("EMT Conti") testified that she arrived on the scene at 5:30 a.m. to tend to a male body later determined to be Valeriy Krichmar. EMT Conti testified that she determined Valeriy to be dead at or before 5:31 a.m. and this was confirmed during a telephone call with a physician at the University of Pennsylvania Hospital. The time of death recorded on Valeriy's death certificate, 6:17 a.m., was registered upon his body's arrival at the hospital, forty five minutes after EMT Conti had pronounced Valeriy dead at the scene. EMT Conti admitted that she could not determine an exact time of death for Valeriy because "[h]e was involved in a fire" but when she examined his body at the scene she concluded he had been dead for at least several minutes.

> EMT Conti also testified that at the time she arrived on the scene and tended to Valeriy's body there was still another male body in the fire. Police reports indicate that Boris's body was transported directly from the scene to the Philadelphia morgue at 7:50 a.m. and the time of death indicated on both the police report and death certificate is 6:10 a.m. (Exhibits K-2, K-4)

Orphans' Court Opinion, 11/27/2013, at 8–9 (record citations omitted).

The Krichmars did not present any evidence to contradict Conti's testimony.

Based solely on Conti's testimony, the orphans' court found that "Galina and Daniel have not met their burden of proof to demonstrate that

Valeriy survived Boris or that they died other than simultaneously." *Id.* at 9. Therefore, the court applied Pennsylvania's Simultaneous Death Act, which provides:

> Where the insured and the beneficiary in a policy of life or accident insurance have died and there is no sufficient evidence that they have died otherwise than simultaneously, the proceeds of the policy shall be distributed as if the insured had survived the beneficiary.

20 Pa.C.S. § 8504. Accordingly, the orphans' court ruled that the life insurance proceeds were an asset of Boris' estate. Because Galina Krichmar had omitted the life insurance proceeds from her account of Boris' estate, the orphans' court surcharged her $140,915.00.

In this appeal, the Krichmars present three arguments challenging the court's holding that the life insurance proceeds were the property of Boris' estate. The Krichmars argue: (1) Spigler had no standing to call a witness or advocate a position on the issue, (2) Conti's testimony was incompetent and, therefore, insufficient to raise an issue, and (3) the court erroneously conducted a final hearing and closed the record in the absence of counsel, although she could not attend. We address each of these arguments sequentially.

### SPIGLER'S STANDING

In support of their argument that Spigler had no standing to call witnesses and make arguments on the issue of life insurance proceeds, the Krichmars maintain the court erred in permitting Spigler, a mere creditor of

an heir, to call witnesses and make arguments. The Krichmars assert that the court erred when it allowed Spigler to be a party.

By way of background, Spigler had represented Guettel, Boris' surviving spouse, who executed two fee agreements. The first fee agreement was a contingency fee agreement wherein Guettel retained Spigler to provide legal services to her individually, in her effort to establish herself as surviving spouse of Boris Krichmar.[12] Later, Guettell, in her capacity as personal representative of Boris' estate, entered into a second, hourly fee agreement, for services on behalf of the estate and on behalf of her as administratrix D.B.N. of the estate.[13]

_____

[12] The May 2, 2005 fee agreement, provided:

> I agree to pay the said attorney as legal fees **one-third of the gross value of the estate or any portion thereof to which I become entitled** either by way of verdict or settlement. Thereafter, the expenses of suit, pre-trial discovery, investigation, and reports, and the fees of witnesses, if any, shall then be reimbursed to the said attorney.

Fee Agreement, 5/2/2005 (emphasis added).

[13] The January 23, 2009, fee agreement stated:

> On behalf of the Estate, I agree that the Estate shall pay my attorneys Three Hundred ($300.00) per hour for past and future legal services on behalf of the Estate and on behalf of me as Administratrix of the Estate; **provided, however, such fees shall not exceed one-third (1/3) of the gross value of the Estate and shall not be duplicative of nor in addition to any fees payable by the my [sic] personally under any agreement relating to representation of me as an heir of the Estate,** … .

*(Footnote Continued Next Page)*

- 14 -

Thereafter, Spigler and Guettel had differences that led Spigler to file a petition for leave to withdraw from representation, which was granted on November 16, 2012. Spigler then filed a petition for leave to intervene as a creditor of the Estate of Boris Krichmar, asserting intervention under Pennsylvania Rule of Civil Procedure 2327(4) was appropriate because the court's determination of his petition for counsel fees and costs and determinations of the accounts and objections to accounts pending before the court would "affect a legally enforceable interest of Petitioner."[14] Spigler's Petition to Intervene, 12/13/2012, at ¶35. The orphans' court, after hearing argument, allowed Spigler to intervene "as a creditor of the Estate of Boris Krichmar."[15] Orphans' Court Opinion, 11/27/2013, at 5. **See also** N.T., 2/4/2013, at 92, 94.

However, we find Spigler has no "legally enforceable interest" in the Estate of Boris Krichmar, as required by Rule 2327(4), that would entitle him to intervene as a party. To the contrary, under the first fee agreement,

*(Footnote Continued)* _____

Fee Agreement, 1/23/2009 (emphasis added).

[14] **See** Pa.R.C.P. 2327(4) ("At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if … the determination of such action may affect any **legally enforceable interest** of such person whether or not he may be bound by a judgment in the action.") (emphasis added).

[15] Following the court's grant of his petition to intervene, Spigler was represented by his partner, Steven Gross, Esquire.

Spigler is a creditor of Guettel, individually. In this regard, we note this Court, in *In re Luongo*, 823 A.2d 942 (Pa. Super. 2003), held that "creditors of an heir are not proper parties to maintain an appeal from probate of a decedent's will; 'that one of the heirs owes money to a stranger to the [decedent] does not make the stranger a party interested in the will [of the decedent].'" *Id.* at 954 (citation omitted). The *Luongo* Court explained: "In such circumstances, the heir's creditors are said to have no tangible interest in the estate that would confer the right to contest the decedent's will." *Id.* This principle applies herein.

Furthermore, contrary to Spigler's position, Spigler is not a creditor of Boris' estate under the second fee agreement with Guettel. Here, Spigler has no claim against the decedent that makes him a creditor of the estate. Rather, any claim of Spigler with regard to the estate is against the personal representative, Guettel, for representing her in that capacity, and these attorney fees are allowable as administrative expenses of the estate. *See generally*, 20 Pa.C.S. § 3392. We find Spigler's attorney fee arrangement based upon the gross value of Boris' estate was a means to determine the amount of his fee, not a means to give him an interest in Boris' estate. In this regard, we have located no relevant legal authority that supports Spigler's position that his claim for attorney fees for services rendered on behalf of the administratrix permits him to intervene as a party. Therefore,

we conclude the court erred in ruling Spigler had standing.[16]  Furthermore, we find the court's erroneous decision allowed Spigler to present substantive evidence on the life insurance proceeds that would not otherwise have been before the orphans' court judge.

We point out that although Guettel, while represented by Spigler, had filed objections to Galina's account of her administration of Boris' estate, and had filed petitions seeking taxed costs and taxed costs in the form of counsel fees against the Krichmars, Guettel indicated at the hearing she wished to settle the matter.[17]  In fact, the record reflects that Galina and Guettel attempted to put on the record their agreement to withdraw all of their objections to one another's accounts as well as any other outstanding petitions against one another, but were prevented from doing so because

_____

[16] It should be noted that Spigler's petition for counsel fees, filed December 17, 2013, was pending before the orphans' court at the time Spigler was permitted to intervene.  Furthermore, Guettel's first and final account of the Estate of Boris Krichmar, also pending before the court, reflected a disbursement of $20,000.00 to Spigler after she was appointed administratrix D.B.N.  **See** Guettel's First and Final Account, p. 6.  Guettel also identified Spigler as a claimant and requested a reserve amount of $30,659.18 for counsel fees and costs.  **See** Guettel's Petition for Adjudication, p. 8.

[17] From the time Spigler was granted leave to withdraw, Guettel proceeded *pro se*.

Spigler was improperly considered by the court to be a necessary party to the agreement.[18]  *See* N.T., 2/7/2013, at 5–8.

In summary, we conclude that Spigler did not have standing to call Conti as a witness.   Therefore, the issue of life insurance proceeds and the underlying issue of the order of death must be readdressed by the orphans' court.  Since Conti's testimony may yet be presented to the orphans' court by a party with standing, we proceed to address the Krichmars' challenge regarding her testimony.

## CONTI'S TESTIMONY

The Krichmars contend that Conti's testimony was incompetent. Specifically, the Krichmars argue that "Conti could not testify with any reasonable degree of medical certainty what time the person she examined was deceased" and that "she could not even identify the body." The Krichmars' Brief at 66.

Pennsylvania Rule of Evidence 601 provides that "Every person is competent to be a witness except as otherwise provided by statute or in these rules." Pa.R.E. 601(a).  EMT's Conti's testimony was summarized by the orphans' court, and is quoted in the discussion above.  She testified she

---

[18] We do not intend to overstate the testimony of Guettel regarding a settlement agreement, since she did allude to new, undiscussed condition, *see* N.T., 2/7/2013, at 11, but there appeared to be ongoing negotiations. However, the court incorrectly determined that there were three parties in this case.  Absent Spigler as a party, we cannot say that negotiations would not have resulted in a resolution of the objections.

transported the body to Frankford Torresdale Hospital where a doctor in the emergency room made a pronouncement of death. N.T., 2/5/2013, at 119–121. When shown a copy of Valeriy's death certificate indicating he was "DOA" at the "Hospital," she identified the person she had transported to be Valeriy. *Id.* at 123 ("Yes, I guess.").

Here, Conti was present at the scene and could properly testify to her observations. As such, we conclude that Conti's testimony is competent and, on remand, may be presented by a party with standing. It is then for the orphans' court to make its own credibility and weight determinations. *See Lux's Estate*, 389 A.2d 1053, 1056 (Pa. 1978) ("The credibility of the witnesses and the weight to be given their testimony is in the first instance to be determined by the auditing judge.").

## FINAL HEARING

The third argument presented by the Krichmars regarding the life insurance proceeds issue is that the court should not have conducted the final day of the hearing after counsel advised the court that she could not be present, and closed the record in the absence of counsel.

Preliminarily, we note:

> The trial court is vested with broad discretion in the determination of whether a request for a continuance should be granted, and an appellate court should not disturb such a decision unless an abuse of that discretion is apparent. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment

- 19 -

exercised was manifestly unreasonable, or the results of partiality, prejudice, bias or ill-will.

**Corrado v. Thomas Jefferson University Hospital**, 790 A.2d 1022, 1035 (Pa. Super. 2001) (citations omitted).

The court's scheduling orders stated that the hearings on the Estate of Boris Krichmar would be held on "MONDAY AND TUESDAY, FEBRUARY 4 and 5, 2013." Decrees, 1/22/2013 (underlining omitted). At the end of the day on Tuesday, the court advised that the proceedings would continue the next day at 10:30 a.m. **See** N.T., 2/5/2013, at 198. On Wednesday, at the end of the day, the court advised that the hearing would resume the next day at 3:00 p.m. **See** N.T., 2/6/2013, at 198. On Thursday, at the end of the day, the court advised the parties "we'll see you tomorrow at 10:00." N.T., 2/7/2013, at 68. The Krichmars' counsel stated on the record she was not able to attend the hearing the next day due to a doctor's appointment for her daughter that could not be rescheduled. **See id.** at 68. The court responded that it already had granted enough continuances and that the case would go on. **Id.** at 71–72. The court added that the case would finish tomorrow. **Id.** at 72.

The court's decisions to deny a continuance and close the record in the absence of counsel foreclosed the Krichmars' counsel from presenting any additional evidence or witnesses to refute Conti's testimony. In light of the fact that Conti's testimony went to the issue most critical to the adjudication of Boris' and Valeriy's estates, we conclude the court's ruling was an abuse of discretion.

**CONCLUSION**

In this case, the question of order of death with respect to the life insurance proceeds has a domino effect upon the remaining issues raised in this appeal. Resolution of this question affects the surcharge against Galina for omitting the life insurance proceeds from her account and placing this asset in Valeriy's estate (Issue #2). Resolution of this question affects the issue of the Krichmars' standing to challenge Guettel's administration of Boris' estate (Issue #5).[19] Resolution of this question also affects the gross value of Boris' estate and Spigler's claim for attorney fees (Issue #1). While issues regarding other surcharges imposed against Galina for disallowed disbursements (Issue #2) and taxed costs and taxed costs in the form of counsel fees against the Krichmars (Issue #3) are not so affected, until the question of the order of death vis à vis the issue of life insurance proceeds is properly resolved in the orphans' court, it is premature for this Court to address these issues because the accounts may have to be restated.

_____

[19] If Valeriy survived Boris, Valeriy would be an heir of Boris' estate along with Guettel. **See** 20 Pa.C.S. § 2102(4) ("The intestate share of a decedent's surviving spouse is: … If there are surviving issue of the decedent one or more of whom are not issue of the surviving spouse, one-half of the intestate estate."). Therefore, Galina, as administratrix of Valeriy's estate, and Daniel, as Valeriy's heir, would have standing to challenge the administration of Boris' estate.

Accordingly, we reverse the orphans' court's decree and remand for a determination whether the life insurance proceeds are an asset of Boris' estate or Valeriy's estate. In considering the applicability of the Simultaneous Death Act, 20 Pa.C.S. § 8504, the court should do so without reference to Conti's testimony, unless presented by a party with standing.

Thereafter, the orphans' court should determine if any amended or restated accounts should be filed, if the parties are unable to reach the settlement suggested at the February 7, 2013, hearing.

## CROSS APPEAL AT 1753 EDA 2014

In his cross appeal, Spigler raises the following five issues:

A. Where the Orphans' Court awarded counsel fees based on the gross value of the estate, did the court err in the valuation of the estate thereby denying counsel of the fees to which he was entitled?

B. Did the Orphans' Court err in denying decedent's estate the full amount of fire loss proceeds for damage to personal property where the decedent was the sole named insured, the proceeds were paid to decedent's estate and there is no evidence to support a claim of ownership of the personal property by the objector?

C. Did the Orphans' Court err in denying decedent's estate the full amount of fire loss proceeds for damages to real property owned by the decedent as a tenant in common where the decedent was the sole named insured?

D. Did the Orphans' Court make factual findings as to the value of decedent's assets that were not supported by the record and contrary to law as to:

    1. The value of decedent's interest in real property?

2. Proceeds recovered from the Pennsylvania Department of Treasury?

3. The value of decedent's motor vehicles?

E. Did the Orphans' Court err in failing to award interest [on the surcharges]?

Spigler's Brief at 3–4.

The first four issues raised by Spigler are substantive arguments regarding the gross value of Boris' estate.[20] In his final issue, Spigler contends the Krichmars should be surcharged with interest. As discussed in

_____

[20] As mentioned in Footnote 11, **supra**, the orphans' court surcharged Galina and from the surcharges awarded Spigler counsel fees of $52,330.01. We note that Guettel's account reflects that Spigler was paid $20,000.00, and that the court credited this amount when calculating Spigler's fee. Nevertheless, it is unclear whether the court's fee determination of one-third of the gross value of Boris' estate was based upon Spigler's representation of Guettel as an heir, or Spigler's representation of Guettel as administratrix D.B.N. of Boris' estate.

If, in fact, the fee was for Spigler's representation of Guettel, individually, the gross value of Boris' estate cannot be ascertained until the orphans' court resolves the issue of life insurance proceeds upon remand. If the fee was for Spigler's services to Guttel as administratrix D.B.N., then $20,000.00 appears to be an appropriate fee, as of the time Spigler withdrew from representation of Guettel. While Guettel's account reflects a payment of $20,000.00 to Spigler, her account does not reflect the date of payment, and it is unclear whether this payment was made with regard to her obligation to Spigler as heir or as administratrix. While we presume, since Guettel included the payment in her first and final account, that the $20,000.00 was for Spigler's services to Guettel in her capacity as administratrix, Spigler has commingled his entitlement to fees by referring to both the fee agreements for his representation of Guettel as heir, and the fee agreement for his representation of her as administratrix, in his petition for counsel fees.

- 23 -

the appeal at 1511 EDA 2014, we have concluded that Spigler had no standing to intervene in these proceedings. Accordingly, Spigler has no standing to raise these issues on appeal. Consequently, we dismiss the cross-appeal.

At Docket No. 1511 EDA 2014, Decree reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

At Docket No. 1753 EDA 2014. Cross-appeal dismissed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/1/2015