J-A20011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF CHARLES CROWDER, III AN INCAPACITATED PERSON | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  CHARLES CROWDER, III | : : : : : : | |
| | : | No. 323 EDA 2022 |

Appeal from the Decree Entered December 29, 2021
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2020-X1906

| | | |
|---|---|---|
| ESTATE OF CHARLES CROWDER, III AN INCAPACITATED PERSON | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  CHARLES CROWDER, III | : : : : : | |
| | : | No. 327 EDA 2022 |

Appeal from the Decree Entered December 29, 2021
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2020-X1484

BEFORE:   BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:            **FILED NOVEMBER 1, 2022**

Charles Crowder, III, (Appellant) appeals from the December 29, 2021

amended final decree entered by the Montgomery County Orphans' Court that

determined that Appellant remained incapacitated.[1]  The decree also removed

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The two appeals were consolidated *sua sponte* by this Court in accordance
with Pa.R.A.P. 513.  **See** Order, 3/2/22.

Appellant's daughter, Tierra Williams, as his healthcare power of attorney, continued Edythe Shapiro's appointment as the plenary permanent guardian of Appellant's estate, and appointed Edythe Shapiro the guardian of Appellant's person, which authorized her to consent to medical treatment for Appellant. After review, we affirm.

We begin by setting forth our standard of review.

> Our standard of review of the findings of an Orphans' Court is deferential.
>
> > When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.
> >
> > However, we are not constrained to give the same deference to any resulting legal conclusions.
>
> *In re Estate of Harrison*, 745 A.2d 676, 678-79 (Pa. Super. 2000), *appeal denied*, … 758 A.2d 1200 ([Pa.] 2000) (internal citations and quotation marks omitted). "The Orphans' Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Luongo*, 823 A.2d 942, 951 (Pa. Super. 2003), *appeal denied*, … 847 A.2d 1287 ([Pa.] 2003).

*In re Fiedler*, 132 A.3d 1010, 1018 (Pa. Super. 2016) (quoting *In re Estate of Whitley*, 50 A.3d 203, 206-07 (Pa. Super. 2012)).

Appellant raises the following two issues for out review:

1. Whether the trial court erred and otherwise abused its discretion by appointing a Guardian of the Person where the incapacitated person had demonstrated that he was able to

handle his own affairs and make appropriate decisions for himself and where he had an adequate support system available to assist him if needed?

2. Whether the decision of the Orphans' Court was against the weight of the evidence?

Appellant's brief at 4.

We have reviewed the certified record, the briefs of the parties, the applicable law, and the thorough opinion authored by the Honorable Gail A. Weilheimer of the Orphans' Court Division of the Court of Common Pleas of Montgomery County, dated March 8, 2022. We conclude that Judge Weilheimer's well-reasoned opinion appropriately disposes of the issues and accompanying arguments presented by Appellant. Accordingly, we adopt Judge Weilheimer's opinion as our own and affirm the decree from which Appellant appealed.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/1/2022

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PA
ORPHANS' COURT DIVISION

O.C. NO. 2020-X1906
and
O.C. No. 2020-X1484

ESTATE OF CHARLES CROWDER, III
AN INCAPACTIATED PERSON

| WEILHEIMER, J. | O P I N I O N | March 8, 2022 |
|---|---|---|

This is an appeal by Charles Crowder, III (hereinafter "Appellant"), to the Final Decree dated December 29, 2021 that found after an independent medical evaluation and a review hearing, that the Appellant continued to be incapacitated and has the continued need of a guardian. The Court continued the appointment of Edythe Shapiro as Guardian of the Estate, removed Tiara Williams as health care power of attorney and appointed Edythe Shapiro as Guardian of the Person. The Court further ordered Sonya Pendleton, prior financial power of attorney, to file a full accounting of Appellant's finances and expenditures, authorized Appellant's Guardian Ad Litem to conduct discovery regarding Appellant's finances, including but not limited to issuing subpoenas, and provided that prior heath care power of attorney, Tierra Williams, could petition this Court for a Review Hearing, if she wishes to be considered as Guardian for the Person of Appellant.[1]

---

[1] On December 14, 2021, the Register of Wills served all interested parties, including Tierra Williams with a copy of the court hearing notice for December 29, 2021. The Court's Notice was not returned; however, Appellants' Guardian Ad Litem attempted service of the notice to Ms. Williams that was returned as undeliverable. Ms. Williams attended the initial guardianship hearing Pnd did not inform the Court of any changes to her address. (*Notes of Testimony ("N.T.") Review Hearing to Remove POA*, 12/29/21, at 45-47)

1

# FACTUAL AND PROCEDURAL HISTORY

These consolidated matters were initiated with a Petition for Guardianship filed on June 22, 2020, by 1700 Pine Street Operations, LLC, d/b/a Norriton Square Nursing and Rehabilitation Center (hereinafter "nursing home") to adjudicate Appellant an incapacitated person and appoint a Plenary Guardian of his Estate[2]. *In re Charles Crowder, III, an Incapacitated Person*, 2020-X1484. On July 30, 2020, Ms. Pendleton, after accepting a durable power of attorney to act on Appellant's behalf, filed a Petition demanding an Independent, Medical, Mental, and Cognitive Examination, and sought to nullify the medical power of attorney of Appellant's daughter. *In re Charles Crowder, III, an Incapacitated Person*, 2020-X1906. On September 4, 2020, after a hearing, this Court adjudicated Appellant as incapacitated pursuant to 20 Pa.C.S. § 5501, and appointed Edythe A. Shapiro to be the Plenary Guardian of Appellant's Estate. Tierra Williams remained as his agent under power of attorney for health care decisions. Ms. Pendleton failed to appear at the hearing, despite good service, and this Court dismissed her request to remove Appellant's daughter as health care agent. Appellant filed an appeal from the September 4, 2020 Order dismissing Ms. Pendleton's Petition to remove his daughter as the health care agent. Appellant did not challenge the Court's finding of incapacity or the appointment of the Plenary Guardian of his Estate. On August 20, 2021, the Superior Court of Pennsylvania affirmed the Court's findings of incapacity and the need for a Guardian of the Estate, but remanded this matter for further proceedings to be held to determine whether Tierra Williams should be removed as the health care agent for Appellant. *Estate of Charles Crowder, III, an Incapacitated Person*, 1877 EDA 2020 (Memorandum Opinion August 20, 2021).

---

[2] Charles Crowder appointed his daughter, Tierra Williams, health care power of attorney in 2017.

2

After the remand, this Court issued a December 7, 2021 Rule Return date for responses to the Petition to have Tierra Williams as health care power of attorney. At the Rule Return date the Court held a conference. During the conference, counsel for Appellant orally petitioned the Court to appoint a Plenary Guardian of his Person and requested an independent medical evaluation. *N.T. Conference,* 12/07/21, at 5-9. A Review Hearing to determine if there has been any change in incapacity and to address the remanded Petition to Remove Tiarra Williams as Power of Attorney was scheduled for December 29, 2021. *Id.* at 31. Ms. Pendleton appeared at the December 7, 2021 conference. *Id.* at 14. Appellant named Ms. Pendleton to act as his Agent in a durable power of attorney executed on February 7, 2020. Ms. Pendleton helped Appellant pay his phone bills because he could not pay his bills online. *Id.* at 23. She also purchased him clothing and snacks. *Id.* at 19-20. Ms. Pendleton estimated that she spent $8,000.00 paying Appellants' bills through his Wells Fargo account. *Id.* at 23-24. Ms. Pendleton denied being in charge of Appellant money at the present time, and expressed he should not be considered incapacitated. *Id.* at 19-30. The Court advised Ms. Pendleton that a hearing to determine Appellant's incapacity would be held on December 29, 2021. *Id.* at 31.

On December 29, 2021, after a hearing this Court determined Appellant remains incapacitated, maintained Ms. Shapiro as his Plenary Guardian the Estate, removed Tiarra Williams as health care power of attorney and Edythe Shapiro as Plenary Guardian of his Person. *N.T. Review Hearing,* 12/29/21, at 89-90. In making this determination, the Court incorporated the entirety of the record, and testimony from prior proceedings held in these matters on September 4, 2020, and December 7, 2021. *Id.* at 86. Dr. Harry deButts, Appellants' treating physician, and expert in internal medicine opined that Appellant requires 24-hour personal care to meet his personal needs. *N.T. Plenary Guardianship Hearing,* 09/04/20, pg. 18 He suffers from Paranoid

3

Appendix
-31-

Schizophrenia, Type 2 diabetes, Stage 3 chronic kidney disease, hypertension, hyperlipidemia, urinary retention with benign prosthetic hypertrophy, obstructive uropathy, prostate cancer, acid reflux, and has a history of falling. *Id.* at 17. Expert Psychologist Kenneth R. Carroll, Ph.D. who conducted an independent medical evaluation of Appellant on August 25, 2020 opined Appellant meets the criteria to be considered an incapacitated person as to his person and with regard to his financial decision making. *Id.* at 27. Appellant has suffered from Schizophrenia for about forty (40) years. *Id.* at 29, 70. He displays negative symptoms of this condition such as blunt affect, poverty of speech, poor social communication, psychomotor slowing, underactivity, poor self-care, and an inability to meet his daily needs. *Id.* at 29-30. These symptoms render him incapable of assessing his circumstances accurately and consistently. *Id.* at 30, 43-33.

Appellants' daughter Tierra Williams, sister Carolyn Velasquez, and niece Apryl Quick testified that they believe Appellant is incapacitated and in need of a guardian to be appointed. *Id.* at 71, 106, 111. Ms. Williams is a thirty-five year old college graduate from Chestnut Hill University in Philadelphia with a degree in Human Services. *Id.* at 77-78. She is employed full-time at SEI private trust company. *Id.* at 78. Ms. Williams expressed that "I just want the Court to understand that as his only child and only next of kin I did my best and I'm still going to make sure that he's going to be well taken care of in all aspects of his well-being. And I've done the best that I could." *Id.* at 74. Ms. Williams was appointed by Appellant as his health care power of attorney on May 17, 2017. *Id.* at 76. She arranged for Appellant to have an apartment for about a year but that due to his aggressiveness and cognitive behavior he could no longer maintain a home on his own and care for his medical needs. *Id.* at 77. Appellant became very adamant about his wants without understanding the full capacity of his situation and needs. *Id.*

4

Appendix
-32-

Case 2024-A-0906-0.3 Received at Montgomery County Register of Wills Office on 03/06/2022 10:48 AM, Fee - $0.00. The fee certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Ms. Velasquez believes Appellant has been incapacitated for many years, and in desperate need of a guardian. *Id.* at 106, 108. She received phone calls from Appellant advising that he is totally broke in need of money and food, despite receiving benefits. *Id.* Ms. Velasquez is a retiree who moved to Florida who has been concerned that Appellant is being financially exploited by either Mr. Pendleton or his new girlfriend, Doreen Copeland. *Id.* at 107-109. Apryl Quick also received phone calls from Appellant asking to borrow money shortly after he would receive his disability payments. *Id.* at 111. She expressed concern that Appellant was being manipulated by Ms. Pendleton to think that his family members were taking his money. *Id.* at 111-112. Ms. Velaszquez and Ms. Quick believe that Appellants' daughter would be the appropriate person to act as his guardian. *Id.* at 108, 113.

At the request of Appellant's counsel, the Court appointed expert in neuropsychology, Nicole Sestito, Ph.D., to conduct an independent medical evaluation prior the Review Hearing. Dr. Sestito evaluated Appellant on December 22, 2021, and opined that a permanent guardian should be appointed for his Person and Estate. *N.T. Review Hearing*, 12/29/21 at 5-9, 27. Dr. Sestitio found Appellant exhibited impaired cognition in testing and interactions because of cerebrovascular changes, or white matter damage in the brain, which are impacted by his medical conditions of hypertension, hyperlipidemia, and diabetes, and his history of Schizophrenia. *Id.* at 14-15. She opined that Appellant meets the legal criteria for an incapacitated person based upon his performance on an objective measure where he had difficulty answering questions about his health, safety, finances and a lack of insight into his own medical conditions and treatment. *Id.* at 16. He had difficulty staying awake and alert throughout the evaluation, and described as being somnolent. *Id.* at 9-10. He fell asleep during one of the examinations. *Id.* at 10. Appellant demonstrates an inability to engage in executive functioning, meaning the ability to plan, organize,

5

Appendix
-33-

switch back and forth between topics, and accomplish goals. *Id.* at 18-19. He was unable to change between numbers and letters, and count backwards. *Id.* at 19. When asked questions, Appellant could not stay on task and would later state the information randomly. *Id.* at 19-20.

His current health conditions include reflux uropathy, and Stage 3 chronic kidney disease requires Appellant to use a colostomy bag, catheter, and nephrostomy tube. *Id.* at 24-26. Appellant has been hospitalized multiple times because he continues to pull out the catheter tube, which has caused health complications leading to several hospitalizations outside of the facility. *Id.* at 25. Appellant demonstrates a real difficulty in articulating his medical needs, and did not understand safety precautions he would need to care for his condition. *Id.* at 27. He expressed his desire to live outside of the nursing home but was fairly vague in his responses to questioning about his plan on where he would live, and expressed his belief that he could live independently without assistance from others. *Id.* at 30. His primary limitation found by Dr. Sestito is his lack of awareness into his medical conditions, including an understanding of his medical care required after a discharge from a nursing home. *Id.* at 31. Dr. Sestito expressed concern that Appellant would not remember the care required for his own health needs, such as getting the catheter dressed, keeping it in, and if he pulls it out, then calling 911 for assistance. As a diabetic, he also requires assistance administering his insulin injections based upon his blood sugar levels. *Id.* at 32-33. Appellant has difficulty ambulating and requires assistance to transition from sitting to standing, and in and out of his wheelchair. *Id.* at 34. When asked how he would protect himself in the shower from falling, he would answer in the reactive response, i.e. grip something if he was going to fall, rather than a proactive answer that he would install a shower chair or bar to prevent himself from falling. *Id.* at 35.

6

Appendix
-34-

If Appellant stopped taking his prescribed Haloperidol without medical oversight then there would be withdrawal symptoms, and an increased risk of him developing an acute psychotic episode. *Id.* at 39. In addition, if his insulin for his diabetic condition were not properly regulated, Appellant would be a very high risk of falling into a coma and having irreversible damage to his brain and other organs. *Id.* His diabetic condition, even if relatively well-controlled can impact the brain over time, and the nursing home staff expressed concerned that Door Dash food deliveries were being ordered on behalf of Appellant including pizza, sandwiches and fried foods that are not within his diabetic diet. *Id.* at 15-16, 56. Appellant does not understand the harmfulness of this behavior. Ms. Shapiro, the Guardian of the Estate could not identify how the Door Dash food delivery bills were being paid but advised that she did not have access to the bank account in which Appellants' veteran's disability benefits are routed into as this bank account has been set up in the name of a different person as the primary account holder. *Id.* at 50-51, 57.

Appellant lacks the ability to understand how his finances would be handled if he were to be released from the nursing home in that he could not determine if his social security benefits would be enough for him to maintain independent living without someone else to share that responsibility. *Id.* at 33. Appellant would not be aware if someone was trying to exploit him because his responses were reactionary, and his confusion would open him up to influence from other people. *Id.* at 38. This Court posed a hypothetical question to Dr. Sestito, as follows:

> So assume for me the following hypothetical. Let's assume [Appellant] is permitting his girlfriend to have access to his money, that that girlfriend may be enabling him to get nondiabetic meals delivered to the facility, but that girlfriend is also not being a supportive presence for him in any other way other than receiving his funds and giving him the fast food that he wants. What, if anything, from the assessment that you did, if those facts are true, indicate to you about his decision-making ability?

7

*Id.* at 42. Dr. Sestito opined that it would be further evidence that Appellant's decision-making ability is impaired because his lack of awareness interferes with his ability to weigh the pros and cons. *Id.*

Appellant receives income from Social Security benefits annually of $8,777.00, and Veterans service disability benefits annually of $38,596.00 for a combined yearly income of $47,373.00. *N.T. Review Hearing,* 12/29/21, at 49-51. The disability benefits are as a result of his exposure to chemicals while in the military, and he has a history of cancer, which will continue for his lifetime. *Id.* at 52. Appellant would be eligible to keep all of his income, if he were in a veteran-connected facility but he refuses to do so. *Id.* at 53. He owes the nursing home approximately $100,000.00 (One Hundred Thousand Dollars), as a result of their inability to receive the VA portion of his benefits. *Id.* at 50. Appellant lacks the understanding of his financial circumstances with his continued refusal to disclose the location of his veterans benefits.

Miata Bamba, the Director of Social Services at the nursing home, testified that Appellant told her that a portion of his VA benefits are being sent to his friend Sonya Pendleton. *See, N.T., Plenary Guardianship Hearing,* 09/04/20, pg. 65. Appellant also testified as follows:

> THE COURT: What's your opinion of having someone help you make sure your bills get paid?
>
> [APPELLANT]: I don't need nobody to help me. Nobody helped me all these years. They haven't turned the – to hand to me since a while. A while back, when I first come out of the service, they were trying to hand it to me. Not now. Since the VA give me money, they want all a part of it, all a piece of it.
>
> THE COURT: So you think other people want part of your VA benefits?
>
> [APPELLANT]: Yes. That's the whole idea about the whole thing. That's the reason we're here. That's the reason you're here.

8

Appendix
-36-

THE COURT: Sir, how do you pay your current bills? Who pays those for you?

[APPELLANT]: **Sonya Pendleton pays them.**

THE COURT: Okay. If your bills aren't getting paid, would that be Sonya's fault or someone else's fault?

[APPELLANT]: They all getting paid. They all getting paid. Except for the hospital bill, which I haven't had the chance to erase it yet. Because they want to charge my income every month, my income.

*Id.* at 95-96. (emphasis added)

Edith Shapiro, acting as Appellant's Plenary Guardian of his Estate, attempted to gain control of Appellants' veteran's benefits. *N.T. Review Hearing*, 12/29/21 at 49-51, 55, 61. She reviewed the direct deposit account set up at Wells Fargo bank that showed ATM withdrawals and point-of-purchase withdrawals being taken from Appellants' account in about the entire amount that he was receiving in veteran's benefits. *Id.* at 50. Ms. Shapiro closed the Wells Fargo account in an attempt to gain control of the veterans benefits but these were rerouted into an account at the Philadelphia Police and Fireman's' Credit Union in the name of a third party primary account holder that she believes is Ms. Pendleton. *Id.* at 50-51. She is in the process of being appointed as a fiduciary with the Veteran's Administration but is awaiting completion of their independent evaluation. *Id.* at 55. Ms. Shapiro expressed her willingness to assist Appellant in managing his affairs, and act as his Guardian of Person. *Id.* at 56.

Appellants' Guardian Ad Litem filed a Petition to compel Ms. Pendleton to file an accounting on October 7, 2021. This Court granted that request at the Review Hearing held on December 29, 2021. Appellant, who was previously declared incompetent, was given permission to state his position at the Review Hearing. *Id.* at 66-67. He expressed his belief that he did not believe that he needs a guardian. *Id.* at 68. He advised that his veterans benefits are being

9

Appendix
-37-

deposited into an account that is owned by the Philadelphia Police and Fireman's' Credit Union in the name of a "very close friend" who does not want to be associated with the court hearing. *IdA.* at 76. Appellant denied that it was in the name of Ms. Pendleton. *Id.* Appellant demonstrated his inability to proactively address his health care needs, plan for his activities of daily living or appropriately manage his finances, when questioned by the Court.

## ISSUES

On January 31, 2022, Appellant filed a timely Concise Statement of Matters Complained of on appeal, in accordance with this Court's Order dated January 24, 2022. The issues raised therein were as follows:

1. The Court's findings which resulted in the issuance of its Final Decree dated December 29, 2022 were against the weight of the evidence.

2. The Court erred and otherwise abused its discretion in appointing a Guardian of the Person where the incapacitated person had demonstrated that he was able to handle his own affairs and make appropriate decisions for himself and where he had an adequate support system available to assist him if needed.

3. Appellant reserves the right to amend this Concise Statement once the transcript of the December 29, 2022 hearing is made available.

*Appellant's Concise Statement of Issues Complained of on Appeal, 1/31/22.*

## STANDARD OF REVIEW

It is well-settled that "[t]he findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support." *In re Jackson*, 174 A.3d 14, 23 (Pa. Super. 2017)(citation omitted). "This rule is particularly applicable to findings of fact which are predicated upon the credibility of witnesses, whom the

10

Appendix
-38-

judge has had the opportunity to hear and observe, and upon the weight given to their testimony." *Id.* "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill-will." *Harman ex. rel. Harman v. Borah*, 756 A.2d 1116, 1123 (Pa. 2000). In order for an appellant to establish an abuse of discretion, it is "not sufficient to persuade the appellate court that it might have reached a different conclusion under the same factual situation." *Fancsali v. Univ. Health Ctr.*, 761 A.2d 1159, 1162 (Pa. 2000).

## DISCUSSION

Appellant's boilerplate allegation that the findings of this Court that resulted in its Final Decree dated December 29, 2022 were against the "weight of the evidence" is legally insufficient for appellate review. However, this Court will address its decision underlying the Final Decree, and determination that Appellant remains an incapacitated and in need of a Plenary Guardian of his Estate and Person. In his second issue, Appellant argues that this Court abused its discretion in appointing a Guardian of his Person because he demonstrated that he is able to handle his own affairs and make appropriate decisions for himself, as well as he has an adequate support system available to assist him.

### INCAPACITY

Under Pennsylvania law, an incapacitated person is "an adult whose ability to receive and evaluation information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety." 20 Pa.C.S. § 5501. "The court, upon petition and hearing and upon the presentation of clear and convincing evidence, may find a person domiciled in the Commonwealth to be incapacitated and appoint a guardian or guardians of his

11

Appendix
-39-

person or estate." 20 Pa.C.S. § 5511(a). A person is presumed to be mentally competent, and the burden is on the petitioner to prove incapacity by clear and convincing evidence. *In re Hyman*, 811 A.2d 605, 608 (Pa. Super. 2002)(citing *In Re Myers' Estate*, 150 A.2d 525, 526 (Pa. 1959)). The standard of clear and convincing evidence is defined as "testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). This Court is mindful of stated purpose of Chapter 55 of the Probate, Estates and Fiduciaries Code ("PEF"), relating to Incapacitated Persons, 20 Pa.C.S. §§ 5501-5555, as outlined in Section 5502 that provides:

> Recognizing that every individual has unique needs and differing abilities, it is the purpose of this chapter to promote the general welfare of all citizens by establishing a system which permits incapacitated persons to participate as fully as possible in all decisions which affect them, which assists these persons in meeting the essential requirements for their physical health and safety, protecting their rights, managing their financial resources and developing or regaining their abilities to the maximum extent possible and which accomplishes these objectives through the use of the least restrictive alternative; and recognizing further that when guardianship services are necessary, it is important to facilitate the finding of suitable individuals or entities willing to serve as guardians.

20 Pa.C.S. § 5502. In making a determination of incapacity, the court "shall consider and make specific findings of fact concerning:

> (1) The nature of any condition or disability which impairs the individual's capacity to make and communicate decisions.
>
> (2) The extent of the individual's capacity to make and communicate decisions.
>
> (3) The need for guardianship services, if any, in light of such factors as to the availability of family, friends and other supports to assist the individual in making decisions and in light of the

12

existence, if any, of advance directives such as durable powers of attorney or trusts.

(4) The type of guardian, limited or plenary, of the person or estate needed based on the nature of any condition or disability and the capacity to make and communicate decisions.

(5) The duration of the guardianship.

(6) The court shall prefer limited guardianship.

20 Pa.C.S. § 5512.1(a). This Court may appoint a plenary guardian of the Person and Estate "only upon a finding that the person is totally incapacitated and in need of plenary guardianship services." 20 Pa.C.S. § 5512.1(c), (e).

Appellant did not appeal this Court's initial finding of incapacity on September 4, 2020. *Estate of Charles Crowder, III, an Incapacitated Person*, 1877 EDA 2020 (Memorandum Opinion, August 20, 2021, pg. 6). This Court found Appellant was incapacitated and in need of a Guardian of the Estate based upon the evidence presented by Appellants' treating physician, Dr. Harry deButts, III, the independent medical evaluation of expert psychologist Dr. Kenneth R. Carroll, and his family members, Tierra Williams, Apryl Crowder, and Carolyn Velasquez. (*N.T., Plenary Guardianship Hearing* 09/04/20, pg. 122) The Petition filed by the nursing home only requested a Guardian of the Estate for which this Court appointed Ms. Shapiro. *Id.* at 122-125. This Court recognized that Appellants' daughter, Tierra Williams, who had a health care power of attorney would continue to in effect until such time that she would be removed. *Id.* at 122. Sonya Pendleton sought to nullify the health care power of attorney of Ms. Williams for which a hearing was scheduled for December 29, 2021. Appellants' counsel petitioned the Court to appoint a Guardian of his Person at the conference held on December 7, 2021.

On December 29, 2021, after a hearing, this Court properly concluded that the Appellant remains incapacitated within the definition of 20 Pa.C.S. § 5501, and is in need of a Guardian of

13

the Person and Estate based upon the evidence previously submitted, along with the additional credible expert opinion of neuropsychologist Nicole Sestitio resulting from an Independent Medical Exam. Appellant suffers from Paranoid Schizophrenia, Type 2 Diabetes, Stage 3 chronic kidney disease, hypertension, hyperlipidemia, urinary retention with benign prosthetic hypertrophy, obstructive uropathy, prostate cancer, acid reflux, and has a history of falling. He presently displays the negative symptoms of Paranoid Schizophrenia that render him incapable of meeting his daily needs. These symptoms render him incapable of assessing his circumstances accurately and consistently to manage his medical care and financial affairs.

Appellant has been in a nursing home for over two years where he receives 24 hour care. He requires the use of a colostomy bag, catheter, and nephrostomy tube due to his health conditions of reflux uropathy, and Stage 3 chronic kidney disease. Appellant has been hospitalized on multiple occasions due to him removing his catheter tube that resulted in further health complications and the need for hospitalization at a different facility. Appellant is reliant on the administration of insulin injections to manage his Type 2 diabetes, as well as Haloperidol to manage his Paranoid Schizophrenia. He requires assistance transitioning from sitting to standing, and elating in and out of his wheelchair. Despite the current aforesaid circumstances, Appellant expresses his belief that he could live on his own without assistance from anyone.

Appellant lacks insight and an ability to understand his medical needs and financial affairs. He receives monthly Social Security and veterans disability benefits. The veteran's disability benefits could be maintained by Appellant if he transitioned from his current nursing home into a veterans-connected nursing home, which he refuses to do. His veteran's disability benefits are diverted into an account held by someone other than Appellant. He fails to disclose the identity of this person. Meanwhile, his debt to the nursing home continues to accrue. Appellant requires

14

the assistance of others to pay his bills, and has contacted family members complaining that he is broke and in need of financial assistance, despite receiving benefits.

Ms. Shapiro has been acting as Appellants' Plenary Guardian of his Estate since September 4, 2020. She is willing to continue serving in this role, as well as his Plenary Guardian of Person. His only living daughter, Ms. Williams, failed to appear at the December 29, 2021 hearing, despite notice being served on her address that is registered with the Court. By Final Decree, this Court is allowing his daughter to petition the court, if she desires to be considered as his Guardian of the Person. She previously appeared at the September 4, 2020 hearing explaining that she did the best that she could for Appellant but that he could no longer live on his own. His condition deteriorated as well as their relationship. A Plenary Guardian is appropriate as this Court finds that Appellant is totally incapacitated. Appellant remains an incapacitated person and is in need of a Plenary Guardian of his Person and Estate as he lacks the ability to make decisions regarding his medical care and financial decisions as a result of his long-time ongoing Paranoid Schizophrenia condition that renders him incapable of caring for his own needs.

## ACCOUNTING

Pursuant to 20 Pa.C.S. § 5610, "[a]n agent shall file an account of his administration whenever directed to do so by the court and may file an account at any other time." The Orphans' Court has jurisdiction over matters involving the "exercise of powers by agents acting under powers of attorney." 20 Pa.C.S. § 711(22). Ms. Pendleton became subject to the duties outlined in 20 Pa.C.S. § 5601.3 at the time she accepted her appointment as Appellant's power of attorney, and therefore, became subject to the duties outlined in 20 Pa.C.S. § 5601.3.

Ms. Pendleton had a durable power of attorney to act on Appellants' behalf, and according to Appellant she was the person who paid his bills at a time. Ms. Pendleton testified that she has

15

Appendix
-43-

spent approximately $8,000.00 on phone bills, clothing and snacks for Appellant out of his Wells Fargo bank account. Ms. Shaprio attempted to gain control of Appellants' VA assets by closing his Wells Fargo bank account from which these monies were being removed by way of ATM withdrawals, and/or point-of-purchase withdrawals. After the Wells Fargo bank account was closed, Appellants' VA benefits were rerouted to a new bank account under the name of another person believed to be at the Police and Fire Credit Union in Ms. Pendleton's name. This Court properly granted the request of the Guardian Ad Litem, Mr. Phillips, to order Ms. Pendleton to file an accounting of Appellants' finances and expenditures. The accounting will enable the interested parties, and those acting on Appellant's behalf, to ensure that he is not being financially exploited, and there is a proper management of his financial affairs.

## DISCOVERY

Pa.O.C. Rule 7.1, provides in pertinent part, that the court may order discovery, including subpoenas. Requests for discovery in Orphans' Court proceedings must be made in good faith and with due regard for the rights of other interested parties. *In re Rosenblum's Estate*, 328 A.2d 158 (Pa. 1974). While fishing expeditions will not be permitted, requests for discovery will be granted liberally provided that the matters sought are relevant to the issues at hand. *In re Thompson's Estate*, 206 A.2d 21 (Pa. 1965). These consolidated matters involve an adjudication of incapacity of Appellant, and a Petition filed by Sonya Pendleton, acting as his durable power of attorney, to nullify Appellant's health care power of attorney with respect to Appellant's daughter. Ms. Pendleton failed to appear at the hearings held on September 4, 2020, and December 29, 2021, despite being served with notice of these proceedings. Appellant owes the nursing home approximately $100,000.00 (One Hundred Thousand Dollars). His largest monthly source of income is his VA service related pension benefits that are being diverted into an account that Ms.

16

Shapiro is unable to access because it was opened in the name of a person other than Appellant. Without access to his Veterans benefits, the Guardian cannot address his outstanding debts to attempt to honor his wishes and relocate him to a different facility. Based on the foregoing permitting discovery is appropriate.

## CONCLUSION

Based on the foregoing reasons, the Court's December 29, 2021 Final Decree should be affirmed.

BY THE COURT:

_____
GAIL A. WEILHEIMER                                    J.

E-Filed on March. 8 2022

David A. Jaskowiak, Esquire (Attorney for Charles Crowder, III)
Gregory W. Philips, Esquire (Guardian Ad Litem for Charles Crowder, III)
Edythe Shapiro, Esquire (Guardian of the Estate of Charles Crowder, III)
Adam Fleisher, Esquire (Counsel for 1700 Pine Street Operations, LLC)
Tierra Williams, Daughter of Charles Crowder, III

17

Appendix
-45-